[Crim. No. 5050. Third Dist. Jan. 30, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
LEON SMITH et al., Defendants and Appellants.

## COUNSEL

Marcus Vanderlaan and Stanley G. Lerner, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Nelson P. Kempsky and Willard F. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRIEDMAN, Acting P. J.**—Defendants Smith, Mitchell, and Easter appeal from judgments after a jury found them guilty of first degree robbery. A fourth defendant, Zollicoffer, was convicted at the same trial but has not appealed. At the trial each defendant was represented by separate counsel. On appeal a court-appointed attorney filed an opening brief on behalf of all three appellants. After the respondent's brief was filed, this court appointed another attorney to represent Smith, on behalf of whom briefs were filed. Although the parties' briefs do not raise the same contentions, we shall consider all contentions as though made on behalf of all appellants to whom they might be available.

The Your Market Liquor Store was held up by two men at about 10:45 p.m. The robbers' faces were covered by hoods and one had a revolver. Joseph Krause, the clerk, was knocked down by one of the men, then, under threat of the revolver, assisted them in opening the cash register. The armed robber forcibly shoved Krause into a rear room, told him to remain there for a while, and took his wallet. Although both robbers were wearing masks, Krause testified that the men holding the revolver took his mask off at one point. At the trial Krause identified defendant Smith, a Negro, as the armed robber.

In addition to Krause's wallet, various items were taken by the men: currency and silver coins; money orders; a box bearing the label of Hoffman's Cherry-a-let candies in which the store kept rolled change and currency; three bottles of liquor.

A few minutes after the robbery two police officers in a patrol car received a broadcast that a liquor store had been held up by male Negroes in a white Chevrolet. The officers then saw an automobile of that description at a point about 30 blocks distant from the site of the robbery. They stopped the car and approached it. Mitchell was the driver and the three other defendants were the passengers. The officers saw Easter make movements as though he were putting something underneath the front seat. Looking into the car with the aid of a flashlight, the officers saw currency and

money orders on the floor of the front compartment and a bottle of brandy on the back seat. On searching the car, the officers found Krause's wallet, two bottles of whiskey, empty money bags, currency and change amounting to $390.46, a .32 caliber pistol underneath the back seat, several .32 caliber shells resting on the back seat, a Hoffman's Cherry-a-let candy box under the front seat, two ski masks and gloves. All these items except the ski masks, gloves, gun, and ammunition were identified as property taken in the robbery of Your Market Liquor Store. The ski masks and gun were identified by Krause as the same or similar to articles used by the two men who had entered the liquor store.

Janet Roper, an accomplice, testified that she and the defendants planned the robbery; that she purchased two ski masks for the robbers to wear; that, on the night of the robbery, she loaned them her 1961 Chevrolet for its commission.

Defendants Mitchell, Easter, and Zollicoffer took the stand. All three confirmed being in Janet Roper's car on the evening in question and stopping outside the Your Market Liquor Store. In general, their testimony was that they had been drinking; that Zollicoffer and Smith entered the store to purchase liquor and had returned with several bottles of whiskey; that they had driven away; that some currency and coins were loose in the automobile. On rebuttal, several officers testified that when arrested the defendants gave no indications of drinking or of intoxication.

█ An issue is raised as to the adequacy of evidence to corroborate the testimony of Janet Roper, the accomplice. █ Corroboration is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice has told the truth. (*People* v. *MacEwing,* 45 Cal.2d 218, 224 [288 P.2d 257].)

█ The admitted presence of all four defendants at the market and their discovery a few minutes later in possession of the accomplice's automobile, the stolen goods and the paraphernalia of crime supplied corroboration. (See *People* v. *Henderson,* 34 Cal.2d 340, 343 [209 P.2d 785]; *People* v. *Antone,* 141 Cal.App.2d 681, 683-684 [297 P.2d 88]; *People* v. *Keene,* 128 Cal.App.2d 520, 525 [275 P.2d 804].)

█ The next question arises from defendant Smith's appearance in a police station confrontation with Krause, the robbery victim. After the arrest of the four suspects, Krause was summoned to the police station where he viewed them. He was unable to identify any of them as the holdup man whose face he had seen.

In *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 382], and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951],

the federal Supreme Court held that a police station lineup is a "critical stage" of the proceedings, which must be preceded by advice to the defendant of his right to the presence of an attorney. The *Wade-Gilbert* rule governs lineups occurring after the date of those decisions, June 12, 1967. (*People* v. *Mosher,* 1 Cal.3d 379, 396 [82 Cal.Rptr. 379, 461 P.2d 659].) The present confrontation occurred on the night of the crime, March 7, 1968, almost nine months after the *Wade-Gilbert* decisions. There is no evidence of compliance with the rule of those decisions. The confrontation was not a lineup in the usual sense, that is, the display of one suspect accompanied by several persons not connected with the criminal occurrence. (See *In re Hill,* 71 Cal.2d 997, 1004-1005 [80 Cal.Rptr. 537, 458 P.2d 449].) It has been said that the *Wade-Gilbert* rule governs any confrontation by a suspect with the potential witnesses against him both before and after an accusatory pleading is filed. (*People* v. *Fowler,* 1 Cal.3d 335, 342-344 [82 Cal.Rptr. 363, 461 P.2d 643].) We shall assume for present purposes that the confrontation violated Smith's constitutional right to counsel.

In the circumstances of the trial the assumed violation is an abstraction, no more. It does not taint Smith's conviction with unconstitutionality. Evidence of the lineup was elicited by the defense, not the prosecution. Krause had testified as a prosecution witness and had made an in-court identification of Smith. Taken on cross-examination by Smith's trial counsel, he admitted viewing the "lineup" of the four defendants and that he had been unable to identify Smith as the robber who had unmasked himself. The purpose of the inquiry was to impeach Krause's courtroom identification by demonstrating that on the very night of the crime he had been unable to identify Smith. ■ The doctrine excluding unconstitutionally obtained evidence is directed at the prosecution. It seeks to discourage unconstitutional police activities by preventing the government from reaping advantage from them. (*Mapp* v. *Ohio,* 367 U.S. 643, 648, 659-660 [6 L.Ed.2d 1081, 1086, 1092-1093, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *People* v. *Cahan,* 44 Cal.2d 434, 445-449 [282 P.2d 905, 50 A.L.R.2d 513].) The doctrine prevents prosecution use of illegal evidence against the violation's victim, not his defensive use of it.

Possibly, though the point is not made in the briefs, Smith's codefendants have standing to complain of a violation of Smith's constitutional rights which affect their own trial. As to Mitchell and Easter, the assumedly unconstitutional showup was harmless beyond a reasonable doubt because it resulted in no one's identification and could have had no significant incriminatory impact. (*Chapman* v. *California,* 386 U.S. 18, 21-24 [17 L.Ed. 2d 705, 708-710, 87 S.Ct. 824].)

Next, several constitutional issues are raised although the defendants' four courtroom attorneys raised no objection. While standard practice precludes appellate contentions not raised below, these issues are set before us as a basis for the claim that defendant's trial representation was so inadequate as to compel reversal. ■ "It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he was entitled." (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

In response, the Attorney General leans on the proposition that the tactical choices of trial counsel are not the equivalent of inadequate representation, although seen to be damaging in retrospect. He fails to apply this proposition to the facts, because he fails to show that the absence of objections was the product of tactical choices. One method of settling a claim of inadequate representation is to determine whether defenses were lost through the ignorance or inadvertence of trial counsel, and if so, whether any of these defenses were crucial.

■ It is claimed that trial counsel should have objected to Krause's courtroom identification of Smith, since the showup on the night of the crime not only violated the *Wade-Gilbert* rule but was unfairly suggestive. (See, e.g., *In re Hill, supra,* 71 Cal.2d at pp. 1004-1006; *People* v. *Caruso,* 68 Cal.2d 183, 188-189 [65 Cal.Rptr. 336, 436 P.2d 336].) The showup was not the producing cause of the courtroom identification by Krause, hence its propriety is of no consequence. ■ Despite an improperly conducted showup, a courtroom identification is admissible if it is based upon other observations of the suspect. (*In re Hill, supra,* 71 Cal.2d at p. 1006.) ■ Krause testified that the robber with the gun had removed his mask while he was forcing Krause to open the cash register; that he, Krause, got a "good glance" at him; that the man took him to the rear storeroom and shoved him so hard that he hit a shelf (knocking liquor bottles off) and fell to his knees; that the man then demanded his wallet. Later when he was shown the four men at the police station, he was "shook up and scared" and "almost sure" but not positive that Smith was the man. He told the police that he could not identify any of the four as the unmasked robber. Three weeks later, at the preliminary examination, he identified Smith as the man. He denied seeing photographs or discussing the identification with the police in the interim.

The police station showup failed to produce identification. The failure diminished the probative value of the later courtroom identification but did

not destroy it, for the latter could be explained by the witness' recovered equanimity and later opportunity for considered reflection. (Cf. *People* v. *Gould,* 54 Cal.2d 621, 626 [7 Cal.Rptr. 273, 354 P.2d 865].) How adversely the failure affected the courtroom identification was a question for the jury to consider in company with the other evidence in the case. The courtroom identification, in any event, had its origin in the observations Krause was able to make in the liquor store, not in the police station showup. A defense objection to the courtroom identification would have been unavailing.

■ It is argued that trial counsel should have objected to the crime equipment and stolen goods found in the Chevrolet, these being the product of an illegal search. The record depicts a standard syndrome: the genesis of reasonable cause for temporary detention and interrogation, followed by disclosure of new facts culminating in a totality of information constituting probable cause for a warrantless arrest and an incidental search of the vehicle. The officers had a broadcast description of a felony involving men and a vehicle corresponding generally to the persons and vehicle stopped. This knowledge provided reasonable cause for temporarily detaining the vehicle and questioning its occupants. (*People* v. *Moore,* 69 Cal.2d 674, 682-683 [72 Cal.Rptr. 800, 446 P.2d 800]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706].) In viewing the car and its interior from their position in the street, the officers gained additional suspicion from the occupants' behavior and from the liquor bottle and money in plain view. The officers' dual sources of knowledge supplied probable cause for the arrest and for an incidental search of the car's interior. (*People* v. *Williams,* 67 Cal.2d 226, 229-230 [60 Cal.Rptr. 472, 430 P.2d 30]; *People* v. *Failla,* 256 Cal.App.2d 869, 873 [65 Cal.Rptr. 115]; see *Chimel* v. *California,* 395 U.S. 752, 764, fn. 9 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034].)

Smith points to discrepancies between the broadcast description and the stopped vehicle, arguing that the police had no reasonable cause for stopping it and questioning its occupants. According to the trial testimony of Officer Tobar, the broadcast informed the patrolling officers that three Negroes in a white 1960 or 1961 Chevrolet had held up a liquor store. At the preliminary examination the same officer testified that the broadcast referred to a white 1962 Chevrolet. The officers actually stopped a white 1961 Chevrolet containing four Negro occupants. Such minor discrepancies do not prevent development of the suspicions which justify temporary detention for questioning. Crime victims often have limited opportunity for observation; their reports may be hurried, perhaps garbled by fright or shock. More garbling may occur as the information is relayed to the police broadcaster and from the broadcaster to the field. It is enough if there is

adequate conformity between description and fact to indicate to *reasonable* officers that detention and questioning are necessary to the proper discharge of their duties. (See *People* v. *Moore, supra,* 69 Cal.2d at pp. 682-683.) There is adequate conformity here.

■ Smith charges his trial counsel with inadequacy in failing to object to prosecution use of a prior statement of Zollicoffer to the police, a statement which implicated Smith. At the time of defendants' trial, *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], called for trial severance if the prosecutor proposed to use a defendant's extrajudicial confession which implicated a codefendant. According to *Bruton* v. *United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], use of the statement at a joint trial may violate the constitutional guaranty of confrontation extended to the incriminated codefendant.

Contrary to Smith's claim on appeal, his trial attorney made an adequate objection. At the outset of the trial the attorney inquired (outside the jury's presence) whether the prosecutor intended to use Zollicoffer's statement. Having in mind the severance demand of *Aranda,* the prosecutor declared that he would not use the statement, except that if Zollicoffer took the stand, he might be impeached by some portion of the statement which did not incriminate any codefendant. The trial then commenced. After Zollicoffer testified as a defense witness, his cross-examination occurred. In the course of cross-examination, the deputy district attorney established that the police had given Zollicoffer the *Miranda* warning. At that point, the attorneys for Smith and Mitchell indicated a renewed objection to use of the statement. Another discussion occurred outside the jury's presence. The prosecutor declared that he intended to use a specified portion of Zollicoffer's post-arrest statement which did not implicate any of the other defendants; that the specified passage was aimed to impeach Zollicoffer's claim of drunkenness when he entered the Your Market Liquor Store. After warning him that he was risking a mistrial, the court permitted the prosecutor to proceed. He then resumed his cross-examination of Zollicoffer, attempting his impeachment not only by the portion of the extrajudicial statement specified in his colloquy with court and counsel, but also by a separate and previously unmentioned passage. We append the additional impeachment, to which objection is raised on appeal, in the margin.*

*"Q. Do you recall going into the liquor store?
"A. Yes, I recall going into the liquor store.
"Q. You recall coming out of the liquor store, don't you?
"A. No.
"Q. Do you recall when you reached the car that you dropped a bottle and broke a bottle in the area of where the car was parked?
"A. No.
"Q. When you were talked to at the police station do you recall being asked:

The two earlier requests for the exclusion or suppression of Zollicoffer's prior statement where the equivalent of an objection made when the offending passage was actually offered. (*Saidi-Tabatabai* v. *Superior Court,* 253 Cal.App.2d 257, 266 [61 Cal.Rptr. 510]; *People* v. *Beasley,* 250 Cal.App. 2d 71, 77 [58 Cal.Rptr. 485].) Smith's counsel had clearly stated his objection on these earlier occasions. The prosecutor shifted from his proclaimed intention and offered a passage in addition to that which he had described earlier. As we shall see, the disputed passage *did* incriminate Smith. If Smith's attorney had repeated his objection in the jury's presence, the incriminatory impact would have been sharpened. His earlier objections were adequate, his silence at the moment not a waiver.

It is not at all clear how the contents of Zollicoffer's statement impeached his testimonial claim of drunkenness. (See *People* v. *Sam,* 71 Cal.2d 194, 208-210 [77 Cal.Rptr. 804, 454 P.2d 700].) There was no real inconsistency. Dubious though its value, the purported impeachment was a distinct violation of *Aranda-Bruton* restrictions. The prior statement was inculpatory, implying that Zollicoffer had been in the store and had "taken" bottles and money. Preceding Zollicoffer to the stand, Mitchell and Easter had testified that Zollicoffer and Smith had entered the liquor store together. When the jurors heard the reference to bottles and money which "you had just taken from the liquor store," they would not confine the reference to Zollicoffer alone. "You" is both singular and plural. Knowing that two men, Zollicoffer and Smith, had entered the liquor store, the jurors would regard the word in its collective sense. Even though a statement may not expressly name the objecting codefendant, it may incriminate him by implication. (*People* v. *Barrett,* 267 Cal.App.2d 135, 144 [72 Cal.Rptr. 681].) Zollicoffer's statement was incriminating hearsay as to Smith.

 Diverging from accepted impeachment technique, the deputy district attorney did not ask the witness whether he had made the prior statement, but whether he "recalled" it. (See, e.g., Appleman, Cross-Examination, pp. 73-96.) Although the witness declared his inability to recall, both the extrajudicial question and its answer entered the jurors' minds. Error of the *Aranda-Bruton* variety occurred.

In treating such errors, appellate courts encounter conflicting tempta-

---

'Question: The bottles and the money and stuff which you had just taken from the liquor store, that was in the car when the officers stopped you?
 'Answer: Yeah, I broke one coming back to the car.'
Now, did you give that answer when you were asked that question on the night that you were interrogated after the robbery?
 "A. I don't recall saying much of anything.
 "Q. All right. So it is your testimony here that you do not recall breaking a bottle?
 "A. No."

tions: the urge to refrain from wounding trial counsel who have blundered into procedural mishap, countered by the impulse to point up whatever moral is available. Shooting from the hip is a necessity in the trial court, careful aim an advantage of the appellate bench. Nevertheless, reticence in the face of blunders in criminal trials may let pass opportunities to elevate the level of trial advocacy and thereby the administration of criminal justice. After reviewing criminal trial records for some years, an appellate judge gets the impression that deputy district attorneys—most of them young, many thrown into felony trials with little seasoning in lesser skirmishes—are prone to overtry their cases. The tendency is augmented, perhaps, by inward insecurity attributable to youth and inexperience. Our present prosecutor had a solid case without embarking upon his perilous impeachment venture. He had an accomplice whose description of a planned robbery was compellingly corroborated at every turn by an immovable combination of other evidence. With the evidence at his command, a defense verdict would have been a miscarriage of justice. He should not have risked a mistrial or reversal by the chancy tactic he pursued.

Lessons aside, solidity of the proper evidence of Smith's guilt demonstrates that the improper evidence was harmless beyond a reasonable doubt. The evidence against Smith was so overwhelming that we find no prejudice. (See *Harrington* v. *California,* 395 U.S. 250, 254 [23 L.Ed.2d 284, 288, 89 S.Ct. 1726]; *In re Hill, supra,* 71 Cal.2d at p. 1015.)

Smith makes other claims of inadequate representation, but these are largely speculative and fail to establish the charge as a demonstrable reality. (*People* v. *Durham,* 70 Cal.2d 171, 192 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) At Smith's request his attorney on appeal has submitted additional arguments urged by his client, i.e., that perjury was committed by Krause and by Janet Roper, also that he was improperly denied a separate trial. The credibility of the witnesses was a jury question. Their testimony was in any event strongly supported by the remaining prosecution evidence. Prosecution use of Zollicoffer's prior statement might have justified a severance at the outset. Nevertheless, because of the harmlessness of the *Aranda-Bruton* error, the joint trial did not prejudice Smith.

The judgments are affirmed.

Regan, J., and Janes, J., concurred.

The petitions for a rehearing were denied February 27, 1970, and appellants' petitions for a hearing by the Supreme Court were denied March 25, 1970.