[Crim. No. 15911. First Dist., Div. Three. Jan. 13, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN P. NATALE, Defendant and Appellant.

## COUNSEL

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Ezra Hendon and Tanya Neiman, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KING, J.**\*—Appellant was convicted of second degree burglary (Pen. Code, § 459) after a trial by the court without a jury. Pursuant to the stipulation of counsel and with the concurrence of the trial judge, appellant made a motion to suppress evidence resulting from a search of appellant's car, which was heard during the trial and denied.

On February 4, 1976, the victim, that is, the woman whose residence was the subject of the burglary, left her home. After she had driven approximately a half-mile, she saw appellant drive by in his car. Upon seeing appellant, she promptly returned home and locked all her doors and windows and then went out again. She knew appellant because he had been a friend of her daughter's some six to eight years earlier and had visited the victim's residence a few days before. Apparently she

_____
*Assigned by the Chairperson of the Judicial Council.

inadvertently failed to lock one window, for when she returned home two hours later, she discovered that her jewelry (including a pendant) and a fur stole were missing. She called the police and Officer Clark responded, and inspected her home. He determined the exit point of the burglar and took a plaster cast of a footprint there which he determined to be recent. He asked her if she had seen anyone in the neighborhood and she mentioned having seen appellant in his vehicle a half-mile away earlier in the morning.

Officer Clark then spoke with her next door neighbor who stated he had seen a man passing his house, on foot, going in the direction of the victim's house during the morning. He described the man as a white male adult, approximately six foot three, one hundred and eighty pounds with black full shoulder length hair and black mustache, wearing a blue denim type jacket. Officer Clark, who was familiar with appellant, concluded that the description was that of appellant. He then placed a call to "be on the lookout" for appellant and his vehicle and to hold him if any jewelry taken from the house was seen in his vehicle. Knowing appellant was a parolee, Officer Clark telephoned his parole officer and informed him that appellant was a suspect in a burglary. Without any further inquiry, the parole officer asked the police officer to apprehend appellant and to search him when he was located.

A couple of hours later, a police officer in a nearby community stopped appellant's vehicle based upon the "be on the lookout" radio call. He did not interrogate appellant or search his car but placed him in the back of the police car. He then radioed for Officer Clark who responded within five or six minutes. When he arrived, Officer Clark informed appellant that his parole officer had been contacted and had asked the officer to conduct a search. Based upon this, appellant gave permission to search the inside of his car. Officer Clark then carried out a search of the car and the detaining officer, during this search, drew Officer Clark's attention to a pendant laying on the floor between the front and back seats near the doorpost. There is no evidence that the pendant was in plain view.

Appellant was then arrested and advised of his *Miranda* rights. He denied having been in the vicinity of the burglary. Thereafter, the plaster cast was compared to appellant's shoes and a close match in size and pattern was seen. The shoes appellant was wearing were seized and introduced into evidence along with the pendant and plaster cast. The

motion to suppress them, and the statement taken after his arrest, was denied.

Since the taking of the shoes and the making of the statement were dependent upon the validity of appellant's arrest, which in turn depended upon the validity of the search which resulted in the finding of the pendant, the primary issue to be resolved is whether the search uncovering the pendant was proper. Appellant contends there was no probable cause to arrest or detain him and the search, being incident thereto, was unlawful. He further contends that the search cannot be justified as a parole search because it was a police search.

■ Appellant characterizes his detention as an "arrest." It is true that placing of a suspect in a patrol car is at least some evidence of arrest (see *People* v. *Freund* (1975) 48 Cal.App.3d 49, 54 [119 Cal.Rptr. 762]; *People* v. *Hatcher* (1969) 2 Cal.App.3d 71, 75 [82 Cal.Rptr. 323]; *People* v. *Terry* (1966) 240 Cal.App.2d 681, 685 [50 Cal.Rptr. 120]) and in some cases may be the determinative evidence that a detention has been turned into an arrest. (See *People* v. *Gibson* (1963) 220 Cal.App.2d 15, 21 [33 Cal.Rptr. 775].) The elements of arrest are taking a person into custody and actual restraint of the person or his submission to custody (Pen. Code, §§ 834, 835; *People* v. *Hatcher, supra*). A suspect's mere presence in a patrol car does not unambiguously state that the elements of an arrest have been satisfied.

■ There was no testimony accounting for appellant's presence in the detaining officer's car, nor was there any evidence that he was subjected to anything more than a temporary restraint of movement incident to an investigation. He was not transported to the police station (*Hatcher, supra*, 2 Cal.App.3d at p. 75) or to the crime site (*Terry, supra*, 240 Cal.App.2d at p. 685) nor was he placed in the patrol car under police guard for several hours (*Freund, supra*, 48 Cal.App.3d at p. 54). In fact, there is nothing, save his presence in the patrol car, to distinguish this case from any other temporary detention.

■ Appellant contends that the mere fact he was seen driving one-half mile from where a burglary later occurred and that someone who resembled him was seen in the area near the house which was burglarized cannot be deemed enough evidence to justify his detention. However, at the time the detention was ordered, Officer Clark possessed additional information. He knew appellant had been at the victim's house a few days previously and he also knew that appellant was a

parolee. Implied in the victim's statement was the fact that appellant's presence in the area was unusual. Apparently the description of the only person seen in the area about the time of the burglary generally fit appellant. These facts were sufficient to justify appellant's detention (see *People* v. *Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632]). Thus, any error in failing to suppress the seized evidence and resultant statement cannot be predicated upon an invalid detention.

■ Although the information known to Officer Clark was sufficient for a detention of appellant, it was not sufficient for a search of his vehicle. The search, being conducted without a warrant, placed a burden upon the prosecution to show proper justification. (*People* v. *McKinnon* (1972) 7 Cal.3d 899, 905 [103 Cal.Rptr. 897, 500 P.2d 1097].) The fact that a car is movable creates an exigency which, under some circumstances, allows a warrantless search where a similar search of a house would not be allowed. (*People* v. *Dumas* (1973) 9 Cal.3d 871, 881-885 [109 Cal.Rptr. 304, 512 P.2d 1208].) However, probable cause must exist before a car may be searched and, in this context, there must be reasonable cause for the officer to believe that contents of the automobile are illegal. (*Chambers* v. *Moroney* (1970) 399 U.S. 42, 48-49 [26 L.Ed.2d 419, 426-427, 90 S.Ct. 1975]; *People* v. *Balassy* (1973) 30 Cal.App.3d 614, 622 [106 Cal.Rptr. 461].)

There were insufficient facts within Officer Clark's knowledge to warrant a prudent man believing that evidence of criminal activity was present in the vehicle. Probable cause to conduct a search did not exist. (*People* v. *Triggs* (1973) 8 Cal.3d 884, 894 [106 Cal.Rptr. 408, 506 P.2d 232].)

■ The prosecution's final justification for the search is based upon the consent to a parole officer search contained in appellant's conditions of parole.[1] Based upon the record before us, this contention cannot be sustained. Appellant's parole conditions were not introduced below. His parole officer testified that a search by the parole officer was a condition of his parole. There is no suggestion by the prosecution that his conditions of parole included a search by any law enforcement officer.

[1]Respondent does not contend that appellant's verbal permission would justify the search. That permission was given only after appellant was informed that his parole officer had authorized Officer Clark to search. Appellant's consent was therefore not voluntary. (*Bumper* v. *North Carolina* (1968) 391 U.S. 543, 548-549 [20 L.Ed.2d 797, 802-803, 88 S.Ct. 1788].)

"Parolee status alone does not justify a search by peace officers other than parole agents. [Citations.] When a parole agent is justified in making a search, he may enlist the aid of the police. [Citation.] The parole agent's physical presence, even his nominal conduct of the physical acts of search, does not signalize validity. The purpose of the search, not the physical presence of a parole agent, is the vital element." (*People* v. *Coffman* (1969) 2 Cal.App.3d 681, 688 [82 Cal.Rptr. 782].) The parole officer may not act merely as a "stalking horse" for the police (*Latta* v. *Fitzharris* (9th Cir. 1975) 521 F.2d 246, 247). When the parole officer is acting merely as an " 'agent, tool or device' " of arresting police officers, the search must be based upon probable cause. (See *In re Martinez* (1970) 1 Cal.3d 641, 647, fn. 6 [83 Cal.Rptr. 382, 463 P.2d 734].)

Appellant contends that the presence of the parole officer is necessary to constitute a parole search, and that the parolee should be informed by the parole officer of the intention to search. We are not required to rule whether the parole officer's presence is an absolute prerequisite to a parole search. In effect, in this case, the parole officer gave carte blanche permission to the police without knowledge of any facts upon which he could have conceivably made an independent judgment. There are no facts distinguishing this search from any police search, except that appellant was a parolee whose parole officer, without possessing any facts to support it, authorized a search by telephone. It is precisely because the information possessed by Officer Clark was insufficient for a police search that justification for a parole search must be shown. The distinction between a police search and a parole search would be meaningless if all that was required for a parole search was for the parole officers to sign a blank check for the police without any knowledge of underlying facts.

Under the facts here, the search was improper and the motion to suppress the evidence should have been granted. The pendant, shoes and statement to the police officer were obviously critical to the prosecution's case and the error in failing to suppress is just as obviously prejudicial. The conviction is reversed.

Scott, Acting P. J., and Smith, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 9, 1978.

---

*Assigned by the Chairperson of the Judicial Council.