[Crim. No. 16384. First Dist., Div. Two. July 10, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
STANLEY HUFF, Defendant and Appellant.

**COUNSEL**

Michael P. Thorman, under appointment by the Court of Appeal, and Thorman, Rainie, Etnire & Haptas for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Timothy A. Reardon and Alvin J. Knudson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROUSE, J.**—Defendant Stanley Huff was charged by information with possession of stolen property, in violation of section 496 of the Penal Code, and burglary, in violation of section 459 of the Penal Code. He was also charged with three prior felony convictions.

Defendant entered a plea of not guilty to both charges. Thereafter, he moved to suppress the evidence obtained in a vehicle search, pursuant to section 1538.5 of the Penal Code, and to dismiss the information, pursuant to section 995 of the Penal Code. These motions were denied.

Pursuant to a plea bargain, defendant entered a plea of guilty to a charge of second degree burglary. He also admitted one of the three prior convictions with which he was charged, and the other two priors were dismissed, as was the charge of possession of stolen property. Defendant was sentenced to state prison. Pursuant to section 1538.5, subdivision (m), of the Penal Code, he has appealed from the judgment of conviction on the ground that the trial court improperly denied his motion to suppress evidence.

Defendant's motion to dismiss the information was submitted for decision upon the preliminary hearing transcript and points and authorities filed by the parties. The testimony produced at that hearing may be summarized as follows: Eugene Crosetti testified that on March 12, 1976, he was the owner of Gino's Men's Wear in Orinda. At approximately 12:30 p.m. that day, a man whom he identified as defendant Huff entered the store, selected a pair of slacks and went into a dressing room to try them on. When he came out of the dressing room, he selected a turtleneck shirt, placed the shirt and the slacks on the counter and indicated that he intended to purchase them. He then told Mr. Crosetti that his boss had his wallet and that he would have to go outside and get it. Defendant left the store, returned approximately two minutes later, and told Mr. Crosetti that his boss had not arrived yet and that he wanted to look at another pair of slacks. Defendant selected another pair of

slacks and again retired to the dressing room. When he emerged, he stated that he did not like that pair of slacks. He again left the store to see if his boss had arrived yet. Defendant entered the store for a third time, went through essentially the same routine, and again departed. When he did not return, Mr. Crosetti looked through the slacks rack, but noticed nothing missing.

Officer Samuelson of the Oakland Police Department testified that at 3:45 p.m. the same afternoon, he was on duty in a patrol car when he received a radio dispatch that an armed robbery had just been committed in the 2300 block of Filbert Street. The robbery suspects were described as two male Negroes in their early 20's who were driving an older model blue pickup truck. The dispatch also stated that the robbers had taken a woman's purse and a bag of groceries.

At the time that he received the radio dispatch, Officer Samuelson was in the 1900 block of Grove Street. He proceeded to drive south on Grove, and within approximately three minutes had reached the 3600 block of Grove Street, which was located some 13 blocks from the scene of the robbery. He saw an older model blue pickup truck with two male Negro occupants pulling away from the curb. Officer Samuelson radioed for a cover vehicle and followed the truck. When the cover vehicle arrived, Samuelson stopped the truck on West MacArthur Boulevard.

Officer Samuelson testified that defendant Huff was in the passenger seat of the truck. He and his companion were ordered out of the truck and pat-searched, but no weapons were found. They were then placed in separate patrol cars. Samuelson next proceeded to look in the truck for the weapon used in the robbery and for property taken in the robbery. Samuelson saw two blue paper bags, which were "double-bagged," in the center of the front seat. The bags were open at the top and appeared to contain clothing. Samuelson did not see any groceries in the bags or any shape which looked like groceries. When Samuelson looked in the bags, he found various items of clothing which still had the price tags attached and which had labels bearing the name "Gino's of Orinda."

On cross-examination, Officer Samuelson denied that he had taken defendant into custody on the charge of robbery, and on redirect examination, he explained that he had made no arrest for robbery because the robbery victim, when brought to the scene of defendant's apprehension, had identified the pickup truck, but was unsure of her

identification of defendant and his companion. Defendant was never charged with the robbery.

Mr. Crosetti testified that he received a telephone call from the Oakland Police Department on the afternoon of March 12, 1976, and that he then checked the dressing room which defendant had used earlier that day and found four empty coat hangers. He also found an empty space in the suit rack. Crosetti then went to the property room at the Oakland Police Department and identified four suits which had been taken from his store and which had a total value of $600 to $700.

The clerk's transcript indicates that a hearing on defendant's motion to suppress evidence was held in the superior court on June 10, 1976, and that there was testimony by an Oakland Police Department radio dispatcher and by Officer Samuelson and argument by both counsel. On April 19, 1977, this court ordered that the record on appeal be augmented to include a reporter's transcript of the June 10 hearing, and on March 24, 1977, there was filed with this court a transcript of the testimony given by the Oakland Police Department dispatcher. However, on May 13, 1977, there was filed with this court a certificate by the court reporter to the effect that the bulk of her stenographic notes of the June 10 proceedings had been lost in storage and could not yet be located. Thereafter, defendant applied for an order to settle the record of the June 10 hearing, and on May 26, 1977, this court granted his application and remanded the matter to the trial court for the preparation of a settled statement of the June 10 hearing, pursuant to rule 36 of the California Rules of Court. Such a statement was prepared and filed with this court on July 6, 1977.

Oakland Police Department radio dispatcher, Kim Jovino, testified that at approximately 1:45 p.m. on March 12, 1976, she was advised that two male blacks in an older model blue pickup truck had committed a robbery at 2529 Filbert Street and that the robbery victim believed that they were armed. She was further advised that the robbers had taken a purse and a shopping bag. All of this information was promptly broadcast to all police units in the immediate vicinity of the robbery scene.

During the course of the suppression hearing, the prosecutor stipulated that the search of the pickup truck "was made without an arrest or a search warrant."

■ We shall first consider defendant's contention that the court reporter's loss of the bulk of her stenographic notes of the June 10

hearing has deprived him of his right to effectively challenge on appeal the propriety of the trial court's order denying his motion to suppress evidence. Although defendant concedes that, at his request, a settled statement of the June 10 hearing was prepared and filed with this court, he complains of the fact that said settled statement is a "skimpy document of only 27 lines" which is "nothing more than a verbatim excerpt of the statement of facts prepared by the Deputy District Attorney for his memorandum of points and authorities in opposition to Defendant's 995 motion." Defendant suggests that, at least to some extent, such a document must represent a "selective version of the facts in question" and that "[i]t would be a mockery of the fundamental adversial premises of our criminal justice system to pretend that such a partisan document could provide an adequate record for [defendant] to argue or the reviewing Court to decide the issues on appeal."

These statements by defendant are misleading. The settled statement concisely summarized Officer Samuelson's testimony concerning the facts known to him at the time he apprehended defendant and searched the pickup truck. Such testimony was identical in all material respects with the officer's testimony at the preliminary hearing. There was no need to summarize the testimony of the police dispatcher, since the court reporter had not lost that portion of her stenographic notes, and that testimony is a part of the record on appeal. Insofar as defendant suggests that the settled statement contains a "selective" version of the facts and is virtually identical with the points and authorities filed by the prosecutor in the trial court, it could just as readily be said that the settled statement was virtually identical with the points and authorities which *defendant* filed in the trial court. The crux of the matter is that there never was any dispute as to the substance of Officer Samuelson's testimony, and there was no need to summarize any other portion of the June 10 hearing. The testimony of the police dispatcher was properly transcribed, and the arguments made by defense counsel and the prosecutor are set forth in detail in the memoranda of points and authorities which they filed in the trial court and which are a part of the record on appeal. We conclude, therefore, that there is no merit to defendant's claim that the settled statement of the June 10 hearing contains any defect which would preclude effective appellate review of the denial of his motion to suppress evidence.

Turning next to the merits of the appeal, defendant contends that the trial court should have granted his motion to suppress the evidence obtained in the search of the pickup truck because the search was not

made pursuant to a warrant nor did the circumstances fall within any of the exceptions to the requirement for a warrant.

■ The questions presented, then, are two-fold: first, whether, in this instance, the officer had probable cause to arrest, so as to justify his · search of the vehicle as an incident of that arrest; and, second, whether an officer who lacks probable cause to arrest but does have probable cause to detain a suspect for questioning, is entitled to search a vehicle for property stolen in a suspected robbery or for the weapon believed to have been used in such crime.[1]

■ Here, the evidence establishes that Officer Samuelson received a radio dispatch to the effect that an armed robbery had been committed by two male Negroes driving an older model blue pickup truck. ■■ ■■■ Within minutes of receiving this dispatch,[2] he observed such a vehicle, which was occupied by two male Negroes, in the act of pulling away from a curb some 13 blocks from the robbery. Although the occupants of the truck were not behaving in a furtive or suspicious manner, the circumstances nevertheless were such as to warrant temporary detention and interrogation.

■ It is well established that a temporary detention may be justified by circumstances falling short of probable cause to arrest a suspect. A police officer may stop and question persons on public streets when the circumstances indicate to a reasonable man in a like position that such a course of action is called for in the proper discharge of the officer's duties. The good faith suspicion which warrants an officer's detention of a person for investigative reasons is necessarily of a lesser standard than that required to effect an arrest. Where there is a rational belief of criminal activity with which the suspect is connected, a detention for reasonable investigative procedures infringes no constitutional restraint. (*People* v. *Harris* (1975) 15 Cal.3d 384, 388-389 [124 Cal.Rptr. 536, 540 P.2d 632], citing other cases.)

---

[1] Officer Samuelson testified that he made no arrest for robbery.

[2] Although the testimony of the police dispatcher was to the effect that the robbery had been reported two hours before Officer Samuelson stopped the pickup truck, the trial court inferably believed the testimony of the officer as to the time factor and rejected that of the dispatcher. An order denying a motion to suppress implies findings of all facts, supported by substantial evidence, which are essential to support the order. (*People* v. *Superior Court (Peck)* (1974) 10 Cal.3d 645, 649-650 [111 Cal.Rptr. 565, 517 P.2d 829]; *People* v. *Freund* (1975) 48 Cal.App.3d 49, 54 [119 Cal.Rptr. 762].)

The facts here presented are similar to those in *People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Smith* (1970) 4 Cal.App.3d 41 [84 Cal.Rptr. 229]; and *People* v. *Chandler* (1968) 262 Cal.App.2d 350 [68 Cal.Rptr. 645]. In the *Smith* case, a police officer had been advised that three Negroes in a white 1960 or 1961 Chevrolet had robbed a liquor store. Shortly thereafter, the officer stopped a white 1961 Chevrolet with four Negro occupants 30 blocks from the robbery scene. In upholding the stop, the appellate court stated: "It is enough if there is adequate conformity between description and fact to indicate to *reasonable* officers that detention and questioning are necessary to the proper discharge of their duties. [Citation.] There is adequate conformity here." (Pp. 48-49.)

■ However, the fact that Officer Samuelson had reasonable cause to detain and question defendant and his companion does not establish that the officer was entitled to search the paper bags in the pickup truck. (*In re Michael V.* (1974) 10 Cal.3d 676, 681 [111 Cal.Rptr. 681, 517 P.2d 1145].)

In *People* v. *Mickelson, supra,* 59 Cal.2d at page 454, the California Supreme Court held that where an officer lacks probable cause for arrest but does possess reasonable cause to detain a subject for purposes of investigation, the officer is entitled to take reasonable precautions for his own safety and is also entitled to interrogate the suspect and to seek to determine whether he can be identified by the victim of the crime being investigated. However, the court held that the officer was not entitled to rummage through baggage in the suspect's car in the hope of finding evidence of the crime which he was suspected of having committed, that such a search excluded the bounds of reasonable investigation, and that it could not be justified by what it turned up.

Likewise, in *People* v. *Smith, supra,* 4 Cal.App.3d at page 48, the appellate court pointed out that the police did not possess the right to search the defendants' car merely because they had cause to detain and question the defendants, and that the right to conduct such a search arose only when, in the course of the temporary detention, the officers acquired additional information sufficient to establish probable cause for arrest. Although the officers in *Smith* initially knew only that the vehicle which they stopped and its occupants matched the broadcast description of a liquor store robbery, the officers subsequently observed one of the defendants hiding something under the front seat and they also saw currency, money orders and a bottle of brandy in plain view in the car.

The appellate court held that it was only when the officers became aware of these additional facts that they acquired the right to arrest the defendants and to search the car as an incident to said arrest.

When the reasoning of these cases is applied to the factual situation before us, it becomes evident that the search of the paper bags in the pickup truck cannot be justified. Officer Samuelson had no need to take any precautions for his own safety. Immediately after stopping the pickup truck, he conducted a pat search of defendant and his companion, finding no weapons of any kind, and the two men were then confined in separate patrol cars. Any fear which Officer Samuelson might have felt for his safety must have been dispelled at this point.

Nor did Officer Samuelson's observations at the scene of the temporary detention of defendant and his companion furnish the officer with any additional information sufficient to create reasonable cause to arrest defendant. There is no evidence that defendant or his companion resisted being pat-searched or placed in the patrol car or that they made any incriminating statements or otherwise behaved in a suspicious manner. As for the two blue paper bags in the pickup truck, Officer Samuelson knew only that a purse and a grocery bag had been taken in the robbery and that the victim believed that the robbers were armed. Although the paper bags in the truck were "double-bagged," there is nothing in the evidence which suggests that they bore any resemblance to grocery bags. In any event, Officer Samuelson testified that both bags were open at the top and appeared to contain clothing and that he did not see any groceries in the bags or any shape which looked like groceries. He likewise did not see a gun or a purse in either of the bags. He saw nothing but clothing, which he had no reason to connect with the robbery.

■ In certain circumstances, an officer can conduct a warrantless search of an automobile if, under the *Carroll* doctrine (*Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280]), "(1) exigent circumstances [render] the obtaining of a warrant an impossible or impractical alternative, *and* (2) probable cause [exists] for the search." (*People* v. *Dumas* (1973) 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208]; italics added.) Both elements must be satisfied. Even assuming an exigency, the police must have probable cause to search. That is, they must entertain a strong suspicion that the object of the search is in the particular place to be searched. (*Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 563 [128 Cal.Rptr. 641, 547 P.2d 417].)

In the recent case of *People* v. *Natale* (1978) 77 Cal.App.3d 568, 573 [143 Cal.Rptr. 629], the appellate court held that there were insufficient facts within the officer's knowledge to warrant a prudent man believing that evidence of criminal activity was present in the vehicle. Citing *People* v. *Dumas, supra,* 9 Cal.3d 871, 881-885, the court recognized that the fact that a car is movable creates an exigency which, under some circumstances, allows a warrantless search where a similar search of a house would not be allowed. However, the court concluded that probable cause must exist before a car may be searched and, in this context, there must be reasonable cause for the officer to believe that the contents of the car are illegal.

Given the facts of this case, the only reasonable conclusion would appear to be that here, as in the cases cited, we are confronted with a situation where a police officer, who has cause to detain and question but who lacks probable cause to arrest, undertakes a warrantless search in the hope of discovering evidence to connect defendant with the crime which he is suspected of having committed. Under existing case law, we conclude that such a search was unlawful and that the trial court erred in denying defendant's motion to suppress the evidence found in the two paper bags.

■ Defendant also contends that the trial court erred in denying his motion to dismiss the information pursuant to section 995 of the Penal Code. He argues that the only evidence tending to create reasonable or probable cause to believe him guilty of the Crosetti burglary was obtained either in the illegal search of the pickup truck or through exploitation of that search.

■ We agree with the Attorney General that the propriety of the trial court's ruling on defendant's section 995 motion is not an issue which defendant is entitled to raise on this appeal. Defendant's notice of appeal states that said appeal "is based on the denial of defendant's motion under section 1538.5 of the Penal Code, and is taken pursuant to section 1538.5(m) of the Penal Code . . . ." On such an appeal, the sole issue for determination is the correctness of the order denying the defendant's motion to suppress evidence. (*People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872].)

However, where, as in this case, the scope of appellate review is limited to the correctness of the order denying a motion to suppress evidence, the appealing defendant nevertheless has the right to contend that he was

entitled to the suppression of *all* evidence which was the product of an illegal search and seizure and the tainted fruit of such search. (*People* v. *DeVaughn, supra,* 18 Cal.3d at pp. 896-897, fn. 6.) Although defendant has improperly framed his argument as an attack on the trial court's ruling on his section 995 motion, the gist of his position appears to be that *all* of the evidence tending to connect him with the Crosetti burglary, including Mr. Crosetti's identification of defendant and the stolen clothing, was the direct product of the illegal search of the pickup and therefore subject to suppression. The Attorney General, on the other hand, argues that Mr. Crosetti's testimony should be deemed admissible regardless of the illegality of the search of the pickup truck because such testimony was not a result of exploitation of the illegal search. The People rely upon *Lockridge* v. *Superior Court* (1970) 3 Cal.3d 166 [89 Cal.Rptr. 731, 474 P.2d 683], in support of their position.

The *Lockridge* court summarized the applicable rules as follows: "[T]his court has consistently held that the testimony of a witness who was discovered by the exploitation of illegal police conduct is not admissible. [Citations.] If, however, a witness becomes known to the police by means independent of the illegal conduct his testimony is admissible. [Citations.] Moreover, even if the witness was discovered as a result of illegal police conduct, his testimony is admissible if he would have been discovered in the normal course of a lawfully conducted investigation. [Citations.]" (P. 170.)

In this instance, it is undisputed that it was only as a result of the illegal search of the two bags in the pickup truck that the police became aware of the Crosetti burglary. The record fails to establish that the police would have learned of that burglary and defendant's connection therewith by means independent of the illegal search. Mr. Crosetti testified that after defendant left his store, he checked the slacks rack and satisfied himself that nothing was missing. He discovered the loss of the four suits only after the police telephoned him and he went to the police department and was shown the four suits bearing tags from his store. It is a matter for pure speculation whether Mr. Crosetti would have discovered his loss in the absence of the telephone call from the police. Even assuming that he would have discovered the loss at some point in time, it remains a matter for speculation whether he would have connected defendant with that loss and whether he would have reported the loss to the police. Given these fact, it cannot be said that Mr. Crosetti's testimony identifying defendant as the individual who burglarized his store was evidence obtained by a means sufficiently distinguishable so as

to be purged of the primary taint of the illegal search of the pickup truck. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407]; *Lockridge* v. *Superior Court, supra,* 3 Cal.3d at pp. 169-170.)

The judgment is reversed.

Taylor, P. J., concurred.

**KANE, J.**—I reluctantly concur under the compulsion of stare decisis (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 454 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Smith* (1970) 4 Cal.App.3d 41 [84 Cal.Rptr. 229]). This case is yet another example of the frivolous extension of the exclusionary rule. We are required by higher authority to reject, and thereby discourage, proficient and unoppressive police investigation on the abstruse distinction between detention and arrest.

Since the overriding concept in any search and seizure issue is "reasonableness under all the circumstances" (*United States* v. *Rabinowitz* (1950) 339 U.S. 56, 66 [94 L.Ed. 653, 660, 70 S.Ct. 430]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]), and since I believe that Officer Samuelson had probable cause to arrest defendant for robbery, I would—if writing on a clean slate—uphold the search. Unfortunately, as spelled out in the main opinion, the slate is covered and this court is not possessed with the power of erasure.

A petition for a rehearing was denied August 9, 1978.