Filed 10/28/21  P. v. Brown CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LISA BROWN,<br><br>        Defendant and Appellant. | A159877<br><br>(Contra Costa County<br>Super. Ct. No. 5-190028-1) |

**INTRODUCTION**

After a jury convicted defendant Lisa Brown of felony identity theft (Pen. Code, § 530.5, subd. (a)), misdemeanor practicing as a pharmacist without a license (Bus. & Prof. Code, § 4051), and two counts of misdemeanor possession of a controlled substance (Health & Saf. Code, §§ 11350, 11377) she was placed on a four-year term of formal probation on the condition that she serve 270 days on electronic home detention. Brown appeals the denial of her suppression motion and the length of her probation term.

While working as a Rite-Aid pharmacist, Brown was asked by a corporate investigator for proof of licensure, which she did not provide and instead left the premises before beginning her shift. Responding to a call from Rite-Aid, a police officer found Brown and asked her identity. The name and birthdate she provided did not yield a match in the officer's computer. In

1

response to his further efforts to verify her identity, she requested a lawyer, and the officer did not inquire further. He placed her in his patrol car, handcuffed, and requested a fingerprint reader. Moments later she tried to discard a bag of pills, which are the subject of her suppression motion. Brown contends that placing her handcuffed in the police car elevated her detention to a de facto arrest. We disagree and shall affirm. However, pursuant to Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill No. 1950), we order that Brown's probation be reduced to a two-year term.

## BACKGROUND

### A.    The Detention

The responding police officer testified at the suppression hearing that he received a dispatch call advising that "[a] possible employee . . . had fled from Rite Aid after being questioned about operating as a pharmacist illegally." The dispatch log stated: "Pharmacist under investigation, ran out once RP [reporting party] . . . started asking her questions, currently sitting inside the Chase Bank. The responsible is Lisa Brown, white female, blond hair, white pharmacy coat, black and white shirt."

At the Chase Bank the officer saw a woman fitting the description, standing in the lobby, holding a white lab jacket. The woman did not appear to be doing any business at the bank and seemed to be waiting for a ride. The officer asked the woman for her name and date of birth. She said her name was "Lisa Brown." He asked Brown if she knew why he was speaking with her. She replied, "No." The officer's efforts to verify her identity through dispatch and on his computer did not yield a match between the name and birthdate provided, and she did not produce any identification. Upon further inquiry, she "immediately asked for an attorney." To avoid the risk that Brown would flee again, the officer placed her in handcuffs in his patrol car

2

and requested a fingerprint reader to confirm her identity. Although Brown made no furtive motions, the officer believed she was a flight risk: "Based on the fact that she had already ran out of the Rite Aid and was, in my opinion, waiting for someone to pick her up from the Chase Bank, I thought maybe she would flee again." While the officer was awaiting the fingerprint reader the car began "shaking side to side." Upon opening the rear door, he saw a Ziploc bag in Brown's left hand. As the officer removed her from the car, she "threw the bag on the ground, and tried to kick it underneath the patrol car." He placed her in another patrol car and recovered "[n]umerous amounts of pills with various shapes and sizes" in the baggie, in his patrol car, and on the ground.

## B.     The Suppression Hearing

The parties disputed whether Brown had standing to challenge the pill seizure or whether she abandoned the pills and did not have a reasonable expectation of privacy in the patrol car. Addressing the detention, Brown argued that placing her cuffed in the patrol car constituted an arrest which was unsupported by probable cause. The People replied that Brown matched the dispatch description and was being investigated by Rite Aid when she fled. The officer located Brown alone in the bank, holding a lab coat, and unable to provide identification. When running her name and the birthdate she provided did not produce a hit, "the officer at least had reasonable suspicion to detain her for giving him false information." The People argued that, believing Brown would again flee, the officer acted reasonably in cuffing her in the patrol car while awaiting the fingerprint reader to determine her identity.

The trial court focused on the information known to the officer from the call log: "pharmacy calls the police, Rite Aid pharmacy calls the police, and

3

says they're investigating a pharmacist and that person just ran out, and here's the name and description. [¶] . . . [¶] It's not from an anonymous source, it's from a business. It's from the pharmacy in the business." On that record, the court found reasonable suspicion to support the detention. The court elaborated that Brown was in the bank "not engaging in banking business . . . . She gives a name, which is a fairly common name, and she has no ID. And the date of birth, this is what I think is particularly important, the date of birth that she gives, there's no match for it." The court found that the circumstances justified the detention and her "being handcuffed in the patrol vehicle, waiting for either the fingerprint reader or something else so they know who they are dealing with."

## DISCUSSION

### I.

### The Trial Court Properly Denied the Motion to Suppress

#### A. Legal Principles

"When a police officer has an objective, reasonable, articulable suspicion a person has committed a crime or is about to commit a crime, the officer may briefly detain the person to investigate. The detention must be temporary, last no longer than necessary for the officer to confirm or dispel the officer's suspicion, and be accomplished using the least intrusive means available under the circumstances. [Citations.] A detention that does not comply with these requirements is a de facto arrest requiring probable cause." (*People v. Stier* (2008) 168 Cal.App.4th 21, 26–27 (*Stier*).)

" '[T]here is no hard and fast line to distinguish permissible investigative detentions from impermissible de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or

4

confirm their suspicions quickly . . . .' [Citations.] Important to this assessment . . . are the 'duration, scope and purpose' of the stop." (*People v. Celis* (2004) 33 Cal.4th 667, 674–675 (*Celis*).) " ' "[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." ' " (*Id.* at p. 675.) "Of significance too are the facts known to the officers in determining whether their actions went beyond those necessary to effectuate the purpose of the stop, that is, to quickly dispel or confirm police suspicions of criminal activity." (*Id.* at pp. 675–676.) We look at the totality of the circumstances of the detention to determine whether an investigatory stop has turned into a de facto arrest. (*Gallegos v. City of Los Angeles* (9th Cir. 2002) 308 F.3d 987, 991.)

Handcuffing and placing a suspect in a patrol car do not automatically elevate a seizure into an arrest requiring probable cause. (See *Celis, supra,* 33 Cal.4th at p. 675 ["stopping a suspect at gunpoint, handcuffing him, and making him sit on the ground for a short period of time" did not convert a detention into an arrest]; see also *People v. Natale* (1978) 77 Cal.App.3d 568, 572 [suspect's "mere presence in a patrol car" was not an arrest].) Where an officer has a reasonable basis for believing a suspect poses a physical threat or might flee, various methods have been permitted to ensure the safe completion of an investigation. (See *People v. Soun* (1995) 34 Cal.App.4th 1499, 1517 [detention when the defendant "was removed from the car at gunpoint by a large number of police officers, was forced to lie on the ground, was handcuffed and placed in a patrol car, was transported from the site of the stop a distance of three blocks to a parking lot," where he was held for 30 minutes]; *In re Carlos M.* (1990) 220 Cal.App.3d 372, 384 [detention when the defendant was handcuffed and transported to hospital for identification by

rape victim; 30–minute duration]; *Haynie v. County of Los Angeles* (9th Cir. 2003) 339 F.3d 1071, 1077 ["A brief . . . restriction of liberty, such as handcuffing, during a *Terry* stop is not a de facto arrest"]; *United States v. Alvarez* (9th Cir.1990) 899 F.2d 833, 838–839 [investigative detention when the defendant forced at gunpoint to get out of his car]; *United States v. Buffington* (9th Cir. 1987) 815 F.2d 1292, 1300 [no arrest when driver was stopped at gunpoint, ordered out of car and forced to lie on the ground]; *United States v. Bautista* (9th Cir.1982) 684 F.2d 1286, 1289 [handcuffing did not convert detention into arrest].)

The prosecution bears the burden of justifying a warrantless search or seizure. (*People v. Williams* (1999) 20 Cal.4th 119, 136; *People v. Romeo* (2015) 240 Cal.App.4th 931, 939.) The court defers to the trial court's factual findings, whether express or implied, if supported by substantial evidence, but exercises "independent judgment" in determining the legality of a search or seizure "on the facts so found." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) An appellate court "must accept factual inferences in favor of the trial court's ruling. [Citation.] If there is conflicting testimony, [the court] must accept the trial court's resolution of disputed facts and inferences, its evaluations of credibility, and the version of events most favorable to the People, to the extent the record supports them." (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.) The court cannot reverse merely because circumstances may support a contrary finding. (*In re Manuel G.* (1997) 16 Cal.4th 805, 823.)

**B.    Analysis**

Brown concedes the officer had reasonable suspicion to detain her but contests his handcuffing her in the back of the patrol car. She argues the circumstances known to the officer did not support a reasonable belief that

6

she posed a safety or flight risk and that his conduct constituted a de facto arrest unsupported by probable cause.[1] We disagree.

The facts are undisputed, and we exercise our "independent judgment" to determine the legality of the seizure. We conclude that the circumstances known to the officer justified detaining Brown in handcuffs in the patrol car while awaiting the fingerprint reader. His conduct was reasonable and did not transform the encounter into an arrest. The officer understood that when a Rite Aid investigator questioned Brown "about operating as a pharmacist illegally" she "fled." Brown matched the dispatch description (including holding her white pharmacy coat); was in the Chase Bank, but apparently not doing bank business; and, he thought, waiting for a ride. In response to his efforts to identify her, Brown provided a birthdate which did not match her name and produced no identification. When he tried to investigate, Brown requested counsel, which hampered his efforts to quickly dispel or confirm the suspicion of criminal activity. (See, e.g., *Celis, supra*, 33 Cal.4th at pp. 675–676.) Initially thwarted, the officer pursued an alternate means to ascertain her identity and requested a fingerprint reader. Knowing that Brown fled from the pharmacy under suspicious circumstances, and estopped in his effort to confirm her identity, it was not unreasonable for the officer to handcuff and place Brown in his patrol car as he waited for the fingerprint reader.

Brown argues, and the People do not dispute, that she did not make any furtive movements while being questioned. She further contends that as "she was a woman in her 50s on foot . . . any attempt to run away would have

---

[1] The People argue that having voluntarily abandoned the pills, Brown lacks standing to challenge their admission on evidence.Because we find the detention supported by reasonable suspicion and the search and seizure lawful, we do not reach this issue.

led to an immediate chase by the officer, who had backup just across the parking lot." We will not "second-guess on-the-spot decisions of officers in the field" (*People v. Wilson* (1997) 59 Cal.App.4th 1053, 1063) in this manner. Rather, we "consider the facts known to the police officer at the time of the detention to determine whether the officer's actions went beyond what was necessary to confirm or dispel the officer's suspicion of criminal activity. [Citation.] The same actions of a police officer might constitute a detention in one instance and an arrest in another instance." (*Stier, supra,* 168 Cal.App.4th at p. 27.)

Responding to Rite Aid's report that Brown had been "operating as a pharmacist illegally," the officer pursued the investigation, attempted unsuccessfully to verify her identity, and detained her to prevent further flight while awaiting the fingerprint reader. We find the circumstances known to the officer justified his actions.

The cases on which Brown relies are easily distinguished, as none involve the situation where, as here, an officer has a reasonable basis for believing the suspect might flee. (See, e.g., *People v. Espino* (2016) 247 Cal.App.4th 746, 758–760 [handcuffing was excessive where the 50-year-old defendant was peaceful and compliant and, once removed from his car, presented little threat of escape by foot]; *In re Antonio B.* (2008) 166 Cal.App.4th 435, 442 [handcuffing was excessive where the defendant and his friend were suspected of smoking marijuana, they did not attempt to flee, and the officers outnumbered them]; *Stier, supra,* 168 Cal.App.4th at pp. 27–28 [handcuffing was excessive where the officer felt uncomfortable because the defendant was "four to five inches taller" than he but the defendant was cooperative throughout the encounter]; *People v. Campbell*

(1981) 118 Cal.App.3d 588, 595–596 [handcuffing was excessive where the defendant was unarmed, cooperative, and noncombative during questioning].)

While other less intrusive means may have been available to effectuate the purpose of the stop, "[t]he question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." (*United States v. Sharpe* (1985) 470 U.S. 675, 687.) We conclude the totality of the circumstances created a sufficient concern that Brown was a flight risk to justify handcuffing and placing her in the patrol car while attempting to determine her identity. The motion to suppress was properly denied.

## II.

### Brown's Period of Probation Must Be Reduced to Two Years

Upon her felony conviction for identity theft, the court sentenced Brown to four years on formal probation, on the condition that she serve 270 days on electronic home detention. When Brown was placed on probation in January 2020, Penal Code section 1203.1, subdivision (a), authorized the court to impose a probation term "for a period of time not exceeding the maximum possible term of the sentence." (Former Pen. Code, § 1203.1, subd. (a).) Assembly Bill No. 1950 modified section 1203.1 to reduce felony probation terms to two years, with certain exceptions not applicable here. Effective January 1, 2021, section 1203.1, subdivision (a) provides: "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine." (Stats. 2020, ch. 328, § 2.)

Recently this court held that Assembly Bill No. 1950 applies retroactively to all cases where the judgment is not yet final. (*People v. Quinn*

(2021) 59 Cal.App.5th 874, 883 (*Quinn*).) In *People v. Sims* (2021) 59 Cal.App.5th 943, 960–961, 964, our colleagues in Division One of the Fourth District Court of Appeal reached the same conclusion.

Despite the contention of both parties that the matter should be remanded to the trial court for a reduction in the term of probation, remand would waste judicial resources. Instead, as we did in *Quinn*, we reduce the term of Brown's probation to two years. (See *Quinn, supra,* 59 Cal.App.5th at p. 885.)

## DISPOSITION

Brown's probation is reduced to a term of two years. In all other respects, the judgment is affirmed.

_____

                                    Ross, J.*



WE CONCUR:



_____

Pollak, P.J.



_____

Streeter, J.



_A159877 People v. Brown_

_____

\* Judge of the Superior Court of California, County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11