[Crim. No. 13500. Fourth Dist., Div. One. Nov. 23, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK ANTHONY JONES, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Michael S. McCormick, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ronald E. Niver and Mark S. Howell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—Mark Anthony Jones appeals from a judgment of conviction based upon a plea of guilty to one count of theft of a cred-. it card (Pen. Code, § 484e, subd. (1))[1] and jury verdicts finding him guilty of robbery (§ 211) and carrying a concealed weapon without a li-

---

[1]All statutory references are to the Penal Code.

cense in a vehicle (§ 12025, subd. (a)). Jones contends: (1) his arrest and the vehicle search were unlawful; (2) he had a constitutional right to the assistance of counsel at his in-the-field identification; (3) the trial court erred in denying his motion to sever the robbery and firearm possession counts; and (4) imposition of sentence for the upper term on the robbery count was based on an erroneous finding he was armed or used a weapon in committing that crime. We conclude these contentions are without merit and therefore affirm the judgment.

*Factual Background*

## The Robbery

Susan Connelly, a nurse at Santa Rosa General Hospital, got off work shortly after midnight on September 9, 1979. As she walked across the street to the parking lot, Connelly noticed a passing car which soon stopped in the lot. She got into her car and locked the door. Two black males, one wearing dark colored clothes and the other dressed in light colored clothes, including a vest, got out of the car she had observed and approached her. The man wearing the vest spoke to Connelly. When she rolled down her car window to hear better, he reached into the car, unlocked the door, and pulled her out of the car.

Elmer Madison, a utility company "troubleshooter," heard her screams as he drove past. When he directed a spotlight toward Connelly's car, the two men fled. Madison called his dispatcher, who in turn called police to report the incident. Madison described the suspects' car as a brown 1965 Oldsmobile or Pontiac, license number 276 ABA. Connelly's purse, which was either on her arm or on the seat next to her, was missing immediately after the assault.

Madison then drove away from the parking lot. He saw the brown car parked near a freeway underpass. He testified he heard three gunshots after he turned and drove about one-half block from the corner where he had seen the brown car.

*The Stop and Vehicle Search*

At about 12:32 a.m. the same night, Deputy Sheriff Greg Berry received a radio dispatch reporting the recent occurrence of an assault

with a deadly weapon involving a firearm at Santa Rosa General Hospital. The dispatch indicated the suspects, two Negro males, were last seen leaving the area in a brown 1965 Oldsmobile or Pontiac sedan, California license 276 ABA. Four minutes later at a location between one and a quarter and one and three-quarter miles from the hospital, Berry saw two Negro males riding in a tan over brown 1970 Oldsmobile sedan, California license 276 AFB. He followed the car for about two and one-half miles before it pulled in toward the curb in front of 1831 Cooper Drive. Berry pulled in his patrol car also, activating the roof-mounted emergency lights. He noticed that two men came out of the house at 1831 Cooper Drive. People also came out to the sidewalk from other dwellings. After a backup unit arrived, Berry arrested the suspects.

Connelly and Madison were brought to the scene of the arrest, where Connelly identified Jones as the man who pulled her from the car. Madison identified Andrews as the man he saw in the driver's seat of the brown car when it was parked near the underpass.

Officer Summers then began searching the suspects' vehicle. He first looked on the driver's side of the interior for the victim's purse or other belongings. Under the passenger seat he found a gun containing four spent cartridges but no live ammunition. Between the door and the seat on the passenger side, he found cosmetics and an eyelash curler. During a subsequent booking search, police seized a $50 bill hidden in Jones' mouth. Connelly testified her purse contained a $50 bill, cosmetics and an eyelash curler.

*Discussion*

*Probable Cause to Arrest*

Jones' first contention is that Deputy Berry did not have probable cause to arrest him. ■ California law provides a peace officer may arrest a person without a warrant "[w]henever he has reasonable cause to believe that the person to be arrested has committed a felony . . . ." (§ 836.) An officer has probable cause for a warrantless arrest if the facts known to him at the moment of arrest would lead a person "'of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'" (*People v. DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558

P.2d 872] (citations omitted).) In determining whether there is probable cause, each case must necessarily be decided upon its own facts and circumstances. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577].)

Jones does not question Deputy Berry's subjective belief, based on the radio description of the suspects and their vehicle, that Jones and Andrews committed a felony. Jones does question, however, whether it was objectively reasonable for Berry to entertain this belief. He points out that the car Berry stopped was a 1970 model bearing license number 276 AFB. The radio description indicated the suspects' car was a 1965 model with license number 276 ABA.

We conclude Berry had ample probable cause to arrest Jones and Andrews despite these minor discrepancies between the police description and the car Berry stopped. One means of establishing probable cause is by matching the description of vehicles. (*People* v. *Rhinehart* (1973) 9 Cal.3d 139, 152, fn. 2 [107 Cal.Rptr. 34, 507 P.2d 642], overruled on another point in *People* v. *Bolton* (1979) 23 Cal.3d 208, 213 [152 Cal.Rptr. 141, 589 P.2d 396].) The description need not match the vehicle in every detail. (See *People* v. *Weston* (1981) 114 Cal.App. 3d 764 [170 Cal.Rptr. 856]; *People* v. *Hutchinson* (1967) 254 Cal. App.2d 32 [61 Cal.Rptr. 868].) Deputy Berry not only observed a car closely matching the dispatch description, but he also knew an assault involving a weapon had recently occurred nearby and observed the car in the vicinity where the crime was committed travelling in a direction consistent with escape from the scene. In addition, Berry realized the occupants of the car looked like the suspects as described in the radio dispatch.

At oral argument, defense counsel again stressed his belief that our decision should be governed by *People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], *People* v. *Curtis* (1969) 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33], *People* v. *Gibson* (1963) 220 Cal.App.2d 15 [33 Cal.Rptr. 775], *People* v. *Smith* (1970) 4 Cal.App. 3d 41 [84 Cal.Rptr. 229], *People* v. *Watson* (1970) 12 Cal.App.3d 130 [90 Cal.Rptr. 483] and *People* v. *Huff* (1978) 83 Cal.App.3d 549 [147 Cal.Rptr. 316]. We have also had the opportunity to review his letter of November 18, 1981, examining the cases which make a distinction between facts giving rise to a detention and those which are sufficient to satisfy the test for probable cause to arrest. Although there does not ap-

pear to be a bright line clearly distinguishing the categories, we are satisfied here that in light of all the circumstances plus the license number information, this case falls just over the line into the probable cause to arrest category.

*The Vehicle Search*

Jones argues the search of the vehicle passenger compartment was unlawful because no exigent circumstances excused police from obtaining a warrant. He concedes on appeal that, following the in-the-field identifications, police had probable cause to believe they would find evidence of the crime in the vehicle. Jones contends, however, that the police should have obtained a warrant before searching the car because they were in no danger and there was no possibility evidence would be destroyed before a warrant was obtained. Jones points out that when Officer Summers began searching the car at least four police officers were present and police had ordered Jones and Andrews out of the car, arrested and handcuffed them and removed them to a police car.

■ It is well established that police may search an automobile without first obtaining a warrant if probable cause exists for the search and exigent circumstances make obtaining a warrant an impossible or impractical alternative. (*People* v. *Cook* (1975) 13 Cal.3d 663, 669 [119 Cal.Rptr. 500, 532 P.2d 148], cert. den. in 423 U.S. 870 [46 L.Ed.2d 100, 96 S.Ct. 135]; *People* v. *Dumas* (1973) 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208].) Less urgency is required to justify warrantless search of an automobile than to search a home or other place where the expectation of privacy is greater. (*People* v. *Dumas, supra,* 9 Cal.3d 871, 882.) The fact the car is mobile and susceptible to theft or vandalism may supply the necessary exigency. (*People* v. *Superior Court (Rhinehart)* (1980) 114 Cal.App.3d 264, 268-269 [170 Cal.Rptr. 639].)

Although in some instances the presence of sufficient law enforcement personnel might negate the need for an immediate, on-the-scene search, here that fact—the presence of four officers—does not invalidate the search. Officer Berry testified that while he was waiting for backup units to arrive he kept Jones and Andrews in their car at gunpoint. During this period two men came out of the house at 1831 Cooper Drive and occupants of other dwellings also appeared on the sidewalk. Berry advised the two men to remain at their residence and

not approach the vehicle. Construing these facts in the light most favorable to the court's ruling, they indicate a danger onlookers might have attempted to interfere or possibly endanger the safety of the police. These circumstances, destruction of evidence and police danger, were of such an exigent nature to permit the warrantless search. Accordingly, we therefore reject Jones' contention police should have obtained a warrant before searching a car they had reason to believe contained evidence of the robbery and a firearm.

*The Constitution Does Not Guarantee a Criminal Defendant the Right to Assistance of Counsel During an In-the-field Identification*

■ Jones next urges us to hold that our state Constitution guarantees a criminal defendant the right to assistance of counsel during an in-the-field identification. He bases this argument on article I, sections 7 and 15 of the California Constitution and advances three reasons why we should so hold: (1) Case law before *Kirby* v. *Illinois* (1972) 406 U.S. 682 [32 L.Ed.2d 411, 92 S.Ct. 1877], supports this view; (2) defendant's counsel can only give effective aid in preparing and trying the case if he or she is present during in-the-field identification; and (3) presence of counsel may neutralize or partially combat potentially erroneous eyewitness identifications.

The California Supreme Court discussed many of these factors in its recent decision holding a criminal defendant has the right to assistance of counsel at a preindictment lineup. (*People* v. *Bustamante* (1981) 30 Cal.3d 88 [177 Cal.Rptr. 576, 634 P.2d 927].) This right is based on independent state grounds, i.e., California Constitution, article I, section 15. The court stated, however, its holding applies "only to lineups held after the date of finality of this opinion." (*Id.*, at p. 102.) The *Bustamante* decision does not support Jones' argument in the case before us therefore. The decision has no retroactive effect. It also does not reach the issue whether a defendant is entitled to counsel at a postarrest, in-the-field identification.

After reviewing *Bustamante* and California precedent on the precise question before us (*People* v. *Anthony* (1970) 7 Cal.App.3d 751, 764-765 [86 Cal.Rptr. 767]; *People* v. *Colgain* (1969) 276 Cal.App.2d 118, 127 [80 Cal.Rptr. 659]; *People* v. *Levine* (1969) 276 Cal.App.2d 206, 208 [80 Cal.Rptr. 731]), we conclude the rationale of California cases

is still persuasive. "[T]he immediate knowledge whether or not the correct person has been apprehended is of overriding importance and service to law enforcement, the public and the criminal suspect himself." (*People v. Anthony, supra,* 7 Cal.App.3d 751, 765.) In addition, the practical in-field problems of getting counsel, although not insurmountable, are clearly distinct and more burdensome than those presented in *Bustamante,* a consideration favoring a policy determination not requiring counsel under such circumstances. Admittedly, some of the concerns expressed by the *Bustamante* court are present in an in-the-field identification in which a suspect may well be prejudiced when singled out as the culprit within a short period of time after the incident. In balance, however, in weighing the respective individual and societal interests to be served, we conclude precedent on this issue to be correct.

### The Court Did Not Err in Denying the Motion to Sever

Jones argues the court erred in denying his motion to sever counts I (robbery) and II (carrying a concealed firearm in a vehicle).[2] ▮ The trial court may, pursuant to section 954, in its discretion, in the interests of justice and for good cause shown, "order that the different offenses or counts set forth in the accusatory pleading be tried separately ...." The statute also provides for consolidated trial on accusatory pleadings charging two or more different offenses if the offenses are "connected together in their commission." (*Ibid.*) In addition, the court may join separate offenses, even though unrelated to the same transaction or event, "if there is a common element of substantial importance in their commission." (*People v. Scott* (1944) 24 Cal.2d 774, 778-779 [151 P.2d 517].) Use of an automobile may constitute a common element of substantial importance. (See *People v. Stone* (1957) 155 Cal. App.2d 259 [318 P.2d 25].) In Jones' case, he and Andrews used an automobile to get to the scene of the robbery and to escape from it.

We also note the robbery was not complete until Jones and Andrews reached a place of temporary safety. "[T]he crime of robbery is not confined to the act of taking property from victims. The nature of the crime is such that a robber's escape with his loot is just as important to

---

[2]Jones' motion requested severance of count I from the three remaining counts. The court granted the motion as to count IV (possession of a controlled substance). Jones later pleaded guilty to count III (theft of a credit card). He therefore confines his challenge on appeal to denial of the motion as to count II.

the execution of the crime as obtaining possession of the loot in the first place." (*People* v. *Carroll* (1970) 1 Cal.3d 581, 585 [83 Cal.Rptr. 176, 463 P.2d 400].) Andrews and Jones did not reach a place of temporary safety until they arrived at 1831 Cooper Drive. Therefore, the charged offenses—robbery and carrying a concealed weapon in a vehicle—were connected together in their commission. We conclude the trial court properly exercised its discretion in denying the motion to sever.

*Sentencing*

Jones' final contention is that the court erred in sentencing him to an upper term of five years on the robbery conviction. The court stated it imposed the upper term for these reasons: "Defendant was armed with or used a weapon at the time of commission of the crime or in connection therewith in escaping from the scene of the crime; the defendant has been convicted of other crimes for which consecutive sentences could have been imposed, but for which concurrent sentences are being proposed; the facts indicate that the robbery was premeditated; the defendant has engaged in a pattern of violent conduct which indicates a serious danger to the public; his prior convictions both as an adult and adjudications as a juvenile are numerous and of increasing seriousness; and his prior performance on probation and/or parole was unsatisfactory."

Jones takes issue with the court's finding that he was armed with or used a weapon in the commission of the robbery. ■ As we pointed out in our discussion concerning the motion to sever, the robbery was not completed until defendants reached the site of the arrest. Madison testified he heard gunfire after he passed the suspects' car immediately following the robbery. This evidence supports the court's finding Jones used a weapon while committing the robbery.

Even if this factor is not supported by substantial evidence, the error is harmless. The court specified numerous factors supported by the record leading it to select the upper term. Those factors are valid reasons for the court's actions. We conclude it is not reasonably probable the court would have selected a different base term, in light of the numerous aggravating factors. We therefore affirm the judgment imposing sentence. (Accord *People* v. *Flores* (1981) 115 Cal.App.3d 67 [171 Cal.Rptr. 365]; *People* v. *Dozier* (1979) 90 Cal.App.3d 174 [153 Cal. Rptr. 53].)

*Disposition*

The judgment is affirmed.

Work, J., and Levitt, J.,* concurred.

A petition for a rehearing was denied December 14, 1981, and appellant's petition for a hearing by the Supreme Court was denied February 17, 1982.

---

*Assigned by the Chairperson of the Judicial Council.