[Crim. No. 13130. Third Dist. Aug. 28, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE LEE DAMPIER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the Reporter of Decisions is directed to publish the introduction, facts and part I of this opinion.

COUNSEL

Valerie D. Toohey, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Nancy Sweet and David de Alba, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CARR, J.—Following a trial by the court, defendant was convicted of attempted second degree burglary. (Pen. Code, §§ 664, 459.)[1] The attempted burglary, although of a residence, was found to be second degree because it occurred during the daytime. (See former § 460.)[2] The trial court further found defendant had suffered five prior felony convictions. Defendant was sentenced to the upper term of 18 months for the attempted burglary (§§ 18, 461, 664), and he received two 5-year enhancements based on prior convictions for robbery and oral copulation (§§ 211, 288a, 667, subd. (a)), for an aggregate term of 11 years and 6 months.

On appeal, defendant challenges his identification by the burglary victim on two grounds: (1) he was denied his right to counsel at an in-the-field showup; and (2) the showup was impermissibly suggestive. He further contends the imposition of two 5-year enhancements pursuant to section 667 was error for the following reasons: (1) his sentence exceeded twice the base term in violation of section 1170.1, subdivision (g); (2) application of section 667 deprived him of due process, equal protection of the laws and constitutes cruel or unusual punishment; (3) section 667 is an unconstitutional ex post facto law; and (4) the power to define crimes and fix penalties is vested exclusively in the Legislature. We conclude these contentions are uniformly without merit and shall affirm.

FACTS

Mrs. Noemi Abundez returned to her home about 7:15 a.m. on November 16, 1982, after completing work on the "graveyard shift" at the Diamond Walnut plant. As she watched the babysitter leave about 7:20 a.m., Mrs.

[1]All further statutory references are to the Penal Code unless otherwise noted.

[2]At the time of the instant offense (Nov. 16, 1982), section 460 provided in relevant part "1. Every burglary of an inhabited dwelling house or trailer coach as defined by the Vehicle Code, or the inhabited portion of any other building committed *in the nighttime*, is burglary of the first degree. [¶] 2. All other kinds of burglary are of the second degree." (Italics added.)

Abundez saw defendant walk by on the sidewalk in front of her house. Although this made her nervous, she returned to the house to go to sleep. After changing to her pajamas, Mrs. Abundez heard a slight noise and began to check the house. She noticed a gate leading to the backyard was open. She went to the baby's bedroom, opened the curtains, and saw defendant standing directly in front of her on the other side of the window. Defendant put up a hand to block Mrs. Abundez' vision. She went to the kitchen and called the police. While on the telephone, she looked through the kitchen window and saw defendant jump the fence and run down the street.

Mrs. Abundez described the burglar to police as a black male wearing a pink shirt and a cap, and told them the direction he was travelling. At approximately 7:30 a.m., a police officer in the vicinity heard a broadcast of this information. Less than a minute later, the officer saw defendant driving from the direction of the attempted burglary. Defendant's car was approximately three and one-half blocks from the crime scene and was the only one the officer observed. Defendant, a black male, was wearing an "obviously pink shirt." The officer stopped defendant. On the front passenger seat the officer observed a knit cap and a pair of gloves. Other officers immediately brought Mrs. Abundez to that location. There she identified defendant and he was taken into custody. It was subsequently discovered that several screens had been removed from the back windows of Mrs. Abundez' house.

DISCUSSION

I

■ Defendant first contends the identification procedure used in this case was fatally defective in that he was denied the right to counsel at the in-the-field showup. Defendant urges *People* v. *Bustamante* (1981) 30 Cal.3d 88 [177 Cal.Rptr. 576, 634 P.2d 927] is controlling, and mandates the presence of counsel at all in-the-field identifications. Defendant misreads *Bustamante,* which held only "that article I, section 15 of the California Constitution, affords to a defendant the right to the presence of counsel at a *preindictment lineup.*" (*Id.,* at p. 102; italics added.) *Bustamante* did not determine whether a defendant is entitled to counsel at a prearrest in-the-field identification, which is the question presented on this appeal.

■ Defendant argues an in-the-field or showup identification is a preindictment lineup within the meaning of *Bustamante.* We disagree. A "lineup" is a relatively formalized procedure wherein a suspect, who is generally already in custody, is placed among a group of other persons whose general

appearance resembles the suspect. The result is essentially a test of the reliability of the victim's identification. (*Bustamante, supra,* 30 Cal.3d at p. 98.) The requirement of counsel's presence encourages the police to adopt regulations ensuring the fairness of such procedures. (*Id.,* at p. 99.) · An in-the-field showup, on the other hand, is generally an informal confrontation involving only the police, the victim and the suspect. One of its principal functions is a prompt determination of whether the correct person has been apprehended. (*People* v. *Anthony* (1970) 7 Cal.App.3d 751, 764 [86 Cal.Rptr. 767].) Such knowledge is of overriding importance to law enforcement, the public and the criminal suspect himself. (*Id.,* at p. 765.) An in-the-field showup is not the equivalent of a lineup. The two procedures serve different, though related, functions, and involve different considerations for all concerned.

Prior to *Bustamante,* the law in California was settled that counsel's presence was not constitutionally required at an in-the-field identification. (*People* v. *Edwards* (1981) 126 Cal.App.3d 447, 453-454, fn. 2 [178 Cal.Rptr. 876], and cases cited therein.) In *People* v. *Jones* (1981) 126 Cal.App.3d 308 [178 Cal.Rptr. 818], the court considered whether *Bustamante*'s reasoning should be extended to overturn this well-established precedent. First noting the importance of knowing whether the right person has been detained, the court in *Jones* stated: "In addition, the practical in-field problems of getting counsel, although not insurmountable, are clearly distinct and more burdensome than those presented in *Bustamante,* a consideration favoring a policy determination not requiring counsel under such circumstances. Admittedly, some of the concerns expressed by the *Bustamante* court are present in an in-the-field identification in which a suspect may well be prejudiced when singled out as the culprit within a short period of time after the incident. In balance, however, in weighing the respective individual and societal interests to be served, we conclude precedent on this issue to be correct." (*Id.,* at p. 317.)

█ *Jones* involved a pre-*Bustamante* identification (p. 316), and *Bustamante* is expressly not retroactive. (30 Cal.3d, *supra,* at p. 106.) However, we find its reasoning persuasive in considering a post-*Bustamante* in-the-field identification. The differences between a post-arrest, controlled lineup and an in-the-field showup distinguish *Bustamante* from this case. █ Moreover, *Bustamante* recognized the right to counsel at a preindictment identification is not absolute. "If conditions require immediate identification without even minimal delay, or if counsel cannot be present within a reasonable time, such exigent circumstances will justify proceeding without counsel." (*Bustamante, supra,* at pp. 101-102.) █ Even assuming *Bustamante*'s holding was applicable, the instant case would fall within this exception. Defendant had been detained, but not arrested. Whether the radio

broadcast standing alone gave the officer probable cause to arrest would be problematical. Releasing defendant could well mean permitting his escape. Obtaining counsel for defendant at 7:30 a.m. would have generated an extended delay. As noted by *Bustamante,* and uniformly held by the cases directly considering the issue of in-the-field showups, these circumstances justify proceeding with the identification in the absence of counsel. We conclude *Bustamante* does not extend beyond its express holding to preindictment lineups and defendant was not deprived of his right to counsel at the field identification in this case. (*People* v. *Edwards, supra,* 126 Cal.App.3d at p. 453.)

II*

. . . . . . . . . . . . . . . . . . . . . . . . .

.The judgment is affirmed.

Puglia, P. J., and Evans, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 21, 1984.

---

*See footnote, *ante,* page 709.