Filed 8/29/24  P. v. Harrison CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEON SAMARIE HARRISON,<br><br>    Defendant and Appellant. | A168439<br><br>(Solano County Super. Ct. No. FCR362582) |

A jury convicted Keon Samarie Harrison of robbery and assault with a semiautomatic firearm.  (Pen. Code, §§ 211, 245, subd. (b); undesignated statutory references are to this code.)  On appeal, Harrison contends we must vacate his convictions because he received ineffective assistance of counsel.  According to Harrison, his trial counsel was ineffective for failing to move to suppress an in-field identification or exclude subsequent tainted in-court identifications of him as the robber.  He also faults his counsel for failing to request a pretrial lineup to test witness identifications in a nonsuggestive atmosphere.  We affirm.

### BACKGROUND

One night in March 2022, a man ran through the front door of a Vacaville Wingstop restaurant toward the cash register.  He was wearing a black hooded sweatshirt with a front pocket, as well as a black ski mask covering his entire face and head aside from his eyes.  He pulled a gun from

1

his pocket and pointed it at an employee behind the counter.  He asked for all the money in the drawer and pointed the gun at the manager's head.  He yelled " 'give it all to me.' "  The manager put bills from the register into a bag, and the man returned the gun to his pocket.  He ran out the door in the direction of a neighboring apartment complex.

The employees called the police, who arrived less than three minutes later.  The employees described the suspect as a Black male, wearing a black top, black pants, and a black ski mask, approximately six feet and one to two inches tall, and weighing 145 to 155 pounds.  Officers also reviewed the restaurant's surveillance footage, which revealed additional details — the robber was wearing a red undershirt and black and red Air Jordan sneakers.  Officers searched for the suspect at the apartment complex approximately 300 to 400 yards away.  Roughly 15 minutes after receiving the initial dispatch call, officers encountered a group of men in the apartment courtyard who fit some characteristics of the suspect's description.  For example, one person had a black hooded sweatshirt with a large logo on it.  But the surveillance footage did not reveal any logo on the robber's sweatshirt.  Officers searched the group but did not find any weapons or anything in their pockets that appeared to relate to the crime, such as a gun, ski mask, or cash.

Approximately one hour later, officers located Harrison seated on the third-floor breezeway of one of the apartment buildings.  He was wearing a black sweatshirt, red undershirt, black pants, and red and black Air Jordan sneakers.  In his pockets, officers found approximately $200 in small bills, such as fives, tens and twenties.  A search of the surrounding area, including the stairwell, revealed a black ski mask and a semiautomatic firearm.  Officers detained Harrison.

An officer drove the Wingstop cashier to the apartment building to confirm whether Harrison was the robber.  The cashier was kept separate from other witnesses to prevent influencing other identifications.  The officer read the cashier an admonition regarding in-field showups.  It warned the cashier to disregard any radio traffic over the police radio and to not allow anything heard to influence his decision.  The admonition expressly stated, " 'The persons contacted by the police may or may not be the persons who committed the crime.  The fact that the person seen may or may not be in police custody should not influence your judgment and you should not conclude or guess that the persons seen are in fact the persons who committed the crime.' "  When the cashier arrived at the apartment complex, officers removed Harrison from the back of the police car and made him stand in front of the car's floodlights.  The cashier recognized the black hooded sweatshirt and pants, and considered Harrison's height and body frame.  Although officers declined the cashier's request that Harrison put on a mask or get closer to him, the cashier "knew it was him" — the robbery suspect — when Harrison lifted his head up and made eye contact with him.

At a preliminary hearing, the cashier again identified Harrison as the masked robber.  He identified Harrison based on his eyes, which he described as large and round.  He stated he could not forget the eyes of the individual who put a gun to his head.  Harrison's counsel objected, arguing the identification was irrelevant and improper authentication.  According to counsel, the cashier testified the suspect was wearing a ski mask covered by a hooded sweatshirt.  Because Harrison was the only person at the preliminary hearing who appeared to be a criminal defendant, defense counsel argued the identification was improper and overly suggestive.

The court overruled the objection but allowed counsel to cross-examine the cashier on those issues.

The district attorney charged Harrison with second degree robbery (§ 211), assault with a semiautomatic firearm (§ 245, subd. (b)), and the lesser included offense of assault with a firearm (*id.*, subd. (a)(2)). The information further alleged Harrison personally used a firearm in connection with the robbery. (§ 12022.53, subd. (b).) During the jury trial, the cashier again identified Harrison in court as the masked robber. A second employee also described the robber's clothing and features that she could recollect. According to the second employee, the robber was wearing a ski mask showing his eyes, which were brown and oval. He was approximately six feet tall and very skinny. When asked to identify a person in the courtroom who pointed the gun at her, the employee — over counsel's objection — identified Harrison. The employee stated that she was "pretty confident" in her identification, based on appellant's eyes and his build. During closing arguments, Harrison's counsel highlighted weaknesses in the employees' identification of Harrison.

## DISCUSSION

Harrison contends the cashier's in-field identification was the product of an unreasonably suggestive one-person showup, and his trial counsel was ineffective by failing to file a motion to suppress the identification and subsequent in-court identifications. In addition, he contends his counsel was ineffective for not requesting a nonsuggestive pretrial lineup for any prosecution identification witnesses. Harrison fails to satisfy the heavy burden for prevailing on an ineffective assistance of counsel claim on appeal. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.)

Criminal defendants have the right to effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 684–686; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  To establish ineffective assistance of counsel, the defendant must demonstrate counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and that deficiency was prejudicial — a reasonable probability that but for the counsel's failure, he would have obtained a more favorable outcome. (*Ledesma*, at pp. 216–218; *People v. Lopez* (2008) 42 Cal.4th 960, 966.)  There is a presumption that counsel's actions fall within a broad range of reasonableness, affording "great deference to counsel's tactical decisions." (*People v. Lewis* (2001) 25 Cal.4th 610, 674.)  We reverse a conviction based on ineffective assistance of counsel only if the record affirmatively discloses counsel had no tactical purpose for the omission, counsel was asked for a reason but failed to provide one, or there is no satisfactory explanation for the omission.  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

First, the failure of Harrison's counsel to challenge the in-field showup did not amount to ineffective assistance because, on this record, a motion to suppress that evidence would likely have been denied.  (*People v. Taylor* (1984) 162 Cal.App.3d 720, 726 [counsel acts with reasonable competence if they conclude a motion to suppress identification would not be successful since counsel "is under no obligation to make idle or frivolous motions"].) When challenging an identification procedure, a defendant must establish it is unnecessarily suggestive, and it was not otherwise reliable under the totality of the circumstances.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.)  Identification procedures are unduly suggestive if they suggest " 'in advance of identification by the witness the identity of the person suspected by the police.' "  (*People v. Ochoa* (1998) 19 Cal.4th 353, 413.)  It is only

necessary to determine the reliability of the identification if the identification procedure is unnecessarily suggestive. (*Id*. at p. 412.) Courts review both identification analysis prongs de novo. (*People v. Kennedy* (2005) 36 Cal.4th 595, 608–609.)

The in-field identification procedures employed here were not unduly suggestive — they were " 'not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification.' " (*People v. Garcia* (2016) 244 Cal.App.4th 1349, 1359 (*Garcia*).) While a single person "showup may pose a danger of suggestiveness, such showups 'are not necessarily or inherently unfair,' " as Harrison contends. (*People v. Medina* (1995) 11 Cal.4th 694, 753.) Single person showups "*for purposes of in-field identifications* are encouraged." (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 387 (*Carlos M.*).) The "element of suggestiveness inherent in the procedure is offset by the reliability of an identification made while the events are fresh in the witness's mind." (*Ibid*.) They serve the interests of both the suspect and law enforcement by facilitating " 'an immediate determination as to whether the correct person has been apprehended.' " (*Garcia*, at p. 1359.) Indeed, such a showup is justified by "the need to exclude from consideration innocent persons so that the police may continue the search for [suspects] while it is reasonably likely [they are] still in the area." (*People v. Johnson* (1989) 210 Cal.App.3d 316, 323.)

Here, an armed robber who pointed a gun at the head of an employee of a dining establishment and stole money from the cash register had just run in the direction of a nearby apartment complex. Wingstop employees described the robber as a Black male wearing all black clothing, including a black hooded sweatshirt. Further information revealed the suspect was wearing a red undershirt and red and black shoes. Officers located Harrison,

6

who fit this description, approximately one hour after the robbery. He had little time to drastically alter his appearance or change his clothing. The showup occurred that same night. Conducting the showup at this time facilitated an identification of the robbery suspect while the events were fresh in the cashier's mind. (*Carlos M.*, *supra*, 220 Cal.App.3d at p. 387.)

More importantly, nothing in the record reflects the officers, "at the threshold, improperly suggest[ed] something to the witness" — that they "wittingly or unwittingly, initiate[d] an unduly suggestive procedure." (*People v. Ochoa*, *supra*, 19 Cal.4th at p. 413.) The cashier was kept separate from other witnesses during the showup to prevent communication that could influence their respective identifications. (*People v. Sequeira* (1981) 126 Cal.App.3d 1, 16 [identification procedure eminently fair where, among other things, witnesses were separated and were precluded from talking with each other].) There is no evidence the officers made any express or implied suggestions to the cashier encouraging him to identify Harrison as the robbery suspect. (*Carlos M.*, *supra*, 220 Cal.App.3d at p. 386.) To the contrary, the officer admonished the cashier that Harrison's presence in police custody should not influence his judgment or lead to the conclusion he in fact committed the crime. This mitigated any suggestibility of the identification procedure. (*People v. Johnson*, *supra*, 210 Cal.App.3d at p. 323 [pretrial identification not impermissibly suggestive where officers did not indicate they had apprehended the suspect or would be showing the witness the suspect]; see also *Garcia*, *supra*, 244 Cal.App.4th at pp. 1360–1361 [no due process violation where police admonished the victims to not infer guilt from the fact the individuals were detained].) That the officers presented only Harrison during the in-field showup does not render it unduly suggestive, contrary to Harrison's assertions. By definition, an in-field

7

showup "is generally an informal confrontation involving only the police, the victim and the suspect." (*People v. Dampier* (1984) 159 Cal.App.3d 709, 713.) And critically, being detained by police is "not so unduly suggestive as to taint the identification." (*Carlos M.*, at p. 386 [handcuffing a detained suspect not unduly suggestive].)

In sum, the in-field showup was not unduly suggestive. Thus, it is unnecessary to address Harrison's arguments attacking the reliability of the cashier's identification under the totality of the circumstances. (*People v. Ochoa, supra*, 19 Cal.4th at p. 412.) We also reject Harrison's challenge to the cashier's in-court identification, which was premised on his contention the in-field showup was improperly conducted. (Cf. *People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1082.) The failure to challenge this evidence did not constitute ineffective assistance of counsel.

*In re Hall* (1981) 30 Cal.3d 408 — a habeas corpus proceeding concluding counsel provided ineffective assistance by failing to investigate or challenge identification procedures employed by police — does not compel a different result. (*Id.* at p. 430.) There, the court identified several aspects of the identification process that tended to be highly and unnecessarily suggestive of guilt. (*Ibid.*) Among other things, officers repeatedly referred to the defendant as the murderer, and defendant was presented in a single person showup a few feet from the witnesses while other suspects were presented in four- to six-person lineups several yards in front of the witnesses. (*Id.* at pp. 430–431.) Despite this, the defendant's counsel made no effort to exclude identification testimony either before or during trial. (*Id.* at p. 431.) Counsel testified he did not believe there was anything wrong with the identification procedures, and in any event, he believed the police would likely testify there was nothing wrong with the procedures — or they

would perjure themselves if there was. (*Id*. at p. 432.) The court deemed this explanation unacceptable to justify counsel's failure to preserve problems regarding the identification for the jury. (*Id*. at p. 433.)

Here, Harrison raises his ineffective assistance of counsel claim on direct appeal, not in a habeas corpus proceeding. (*People v. Lopez*, *supra*, 42 Cal.4th at p. 972 ["except in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal"].) Harrison's counsel was not asked for a reason and did not provide one for failing to suppress the in-field showup. (*People v. Mai*, *supra*, 57 Cal.4th at p. 1009.) And as set forth above, there is a satisfactory explanation for this omission — on this record, there has been no showing the motion would have succeeded. (*People v. Taylor*, *supra*, 162 Cal.App.3d at p. 726.) Unlike *Hall*, the in-field showup here did not have any of these markers of undue suggestiveness. Moreover, Harrison's counsel *did* try to exclude the identifications during trial — he objected to all three in-court identifications. Harrison's counsel was not ineffective for not doing more.

Second, we reject Harrison's argument that his counsel rendered ineffective assistance by failing to seek the suppression of the second employee's in-court identification of him. During the preliminary hearing, counsel objected to the cashier's in-court identification. He argued the witness described the robber as wearing a ski mask covered by a hooded sweatshirt, with no further description. But he noted there was only one person who appeared to be a criminal defendant — Harrison, who was seated at defense counsel's table — thus the identification was improper and overly suggestive. The trial court overruled the objection and noted Harrison's counsel could cross-examine the witness about those issues. Hence, it was

9

reasonable for counsel to believe a pretrial motion to suppress further in-court identifications would have been futile, even if properly filed and litigated.  (*People v. Thompson* (2010) 49 Cal.4th 79, 122 ["Counsel is not ineffective for failing to make frivolous or futile motions"].)

To the extent Harrison argues his counsel was required to demand a pretrial lineup before the second employee could make an in-court identification, we disagree.  An in-court identification that is not preceded by a pretrial identification lineup is not impermissibly suggestive as a matter of law.  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1155.)  Indeed, "there is no absolute right to a pretrial lineup before an in-court identification."  (*Id.* at p. 1155.)  Instead, a defendant may "upon timely request . . . , *be afforded* a pretrial lineup" if "eyewitness identification is shown to be a material issue and there exists a reasonable likelihood of a mistaken identification which a lineup would tend to resolve."  (*Evans v. Superior Court* (1974) 11 Cal.3d 617, 625, 627, italics added, fn. omitted [issuing a writ noting trial court has discretion to order holding a lineup].)  But the lack of a pretrial lineup does not necessarily deprive the defendant of the opportunity to test a witness's "ability to make an identification in a nonsuggestive atmosphere." (*Rodrigues*, at p. 1155.)  For " 'in-court identifications not preceded by a lineup,' " the " 'weaknesses, if any, are directly apparent at the trial itself and can be argued to the court and jury without the necessity of depending on an attempt to picture a past lineup by words alone.' "  (*Ibid.*)

Harrison's counsel could have made a tactical decision that it would be more harmful than helpful to the case to request a pretrial lineup.  For example, if a lineup did occur and the second employee positively identified Harrison as the masked robber, the testimony would have been more

persuasive at trial. By not requesting a pretrial lineup, counsel could have been attempting to forestall a legitimate identification in court.

Moreover, as Harrison acknowledges, his counsel focused extensively on trying to discredit the employee's identification of Harrison as the robber at trial. He cross-examined the second employee on the reliability of her in-court identification, pointing out that she described the suspect as a Black male, and Harrison was the only young, Black male in the courtroom. During closing arguments, counsel argued the employee's in-court identification was unreliable because she had viewed Harrison before testifying — she previously saw him sitting in the courtroom, and he was clearly the person being prosecuted for robbery. He further drew the jury's attention to the fact Harrison is Black and the second employee is not, further undermining the reliability of the in-court identification. (E.g., *People v. McDonald* (1984) 37 Cal.3d 351, 368 ["many jurors are likely to have some awareness of the fact that an eyewitness is more accurate in identifying a person of his own race than one of another race"], overruled on other grounds by *People v. Mendoza* (2000) 23 Cal.4th 896.) If counsel made a tactical decision to press these attacks during trial instead of moving to suppress evidence or request a pretrial lineup, we cannot say any such decision was unreasonable. On this record, there is no basis to conclude counsel's performance fell below an objective standard of reasonableness. Thus, Harrison fails to demonstrate his counsel rendered ineffective assistance.

## DISPOSITION

The judgment is affirmed.

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
PETROU, J.


A168439; *P. v. Harrison*