Filed 7/18/22 P. v. Sharp CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KEVIN SHARP,<br><br>Defendant and Appellant. | F081374<br><br>(Super. Ct. No. SF019630A)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the nonpublished opinion filed on June 21, 2022, be modified as follows:

1.  On page 5, the second full paragraph, the three sentences beginning with "Immediately upon being informed that he was being detained … " are deleted and replaced with:

    As Nakabayashi directed defendant to be seated on the curb, Deputy Jackson arrived and said to defendant from his patrol car, "You are on probation, man."[1] Defendant responded, "Yeah, but I'm on probation …" and was interrupted by Nakabayashi directing him to sit down.

---

[1] At the hearing on defendant's motion to suppress, Nakabayashi testified Jackson was "very familiar with everybody in Wasco" and "had priors with [defendant] …"; he knew defendant was on probation when he saw him. That testimony is consistent with Jackson's later interaction with defendant during the same detention, demonstrating his familiarity with defendant by asking: "You're not living with Larry anymore?" after defendant provided his address.

Nakabayashi then approached defendant and asked, "You say you're on probation?" to which defendant probably responded, "I shouldn't be" and shook his head slightly.[2] Nakabayashi then called dispatch for a records check and received confirmation that defendant was on active probation. Approximately four minutes into the detention, after the dispatcher confirmed to Nakabayashi that defendant was on "three types of probation," defendant unequivocally denied being on probation."

2. On page 11, the third full paragraph, delete remainder of the paragraph after the sentence beginning with "Defendant next contends that his detention was prolonged in violation … " and insert the following:

As noted above, Nakabayashi's initial detention of defendant was supported by a reasonable suspicion of wrongdoing because defendant matched the description of the suspect from the motel incident. Within 30 seconds of the start of the detention, Jackson arrived and identified defendant as being on probation. An officer may not ordinarily detain a suspect longer than necessary to complete the original purpose of the detention " 'unless the officer has an independent reasonable suspicion that the [detainee] has committed unrelated offenses.' " (See *People v. Brown* (1998) 62 Cal.App.4th 493, 498–499.) However, defendant's known status as a probationer was crucial to a determination of whether the stop was ordinary, because neither reasonable suspicion nor probable cause is required for a probation search: "An adult probationer consents to a waiver of his Fourth Amendment rights in exchange for the opportunity to avoid serving a state prison sentence." (*People v. Reyes* (1998) 19 Cal.4th 743, 749.) As soon as Jackson identified defendant as a probationer, the ordinary nature of the encounter changed, because appellant was not an ordinary citizen with full constitutional rights. (*People v. Peck* (1996) 52 Cal.App.4th 351, 362.) That the deputies properly confirmed that defendant's probation was active and included search conditions before conducting the search does not impact our conclusion. Officers may briefly extend the detention of a person they believe to be on probation to verify probation status. (See *People v. Suennen* (1980) 114 Cal.App.3d 192, 200–201 [if additional cause to detain develops after initial stop, additional time

---

**2**      The trial court watched the portion of the body camera footage where defendant responded to Nakabayashi's questions regarding his probation status multiple times, as have we. After watching that portion of the video at least three times, the trial court summarized, "The officer asked if he was on probation. I think [defendant] said, 'I should be.' Or he might have said, 'I shouldn't be.' " After also having reviewed that portion of the video multiple times, we note that it remains a close factual question.

to investigate is allowed].) Based on his probation status, and separate from the initial detention, defendant was independently subject to search without probable cause or reasonable suspicion of wrongdoing. (*Reyes*, at p. 749; *People v. Durant* (2012) 205 Cal.App.4th 57, 66.) Therefore, because the initial detention was lawful, and defendant's probation status gave the officers an independent basis to search defendant, the initial detention was not unreasonably prolonged, and no Fourth Amendment violation occurred.[3]

Except for the modifications set forth above, the opinion previously filed remains unchanged. This modification does not effect a change in the judgement.

Appellant's petition for rehearing filed on July 7, 2022, is denied.

                                                          DE SANTOS, J.
WE CONCUR:

HILL, P. J.

MEEHAN, J.

---

[3] We note that this case did not present a situation where the officers unlawfully initiated and/or extended a detention to indiscriminately probe into a defendant's probation status. There was no initial taint to be cleansed through application of the attenuation doctrine. Nakabayashi stopped defendant based on a reasonable suspicion that defendant was the suspect in the motel incident and Jackson immediately recognized defendant as a probationer and told defendant as much. This opinion does not stand for the proposition that law enforcement is to randomly stop those *not* suspected of any crime to ferret out probation status.

3.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KEVIN SHARP,<br><br>Defendant and Appellant. | F081374<br><br>(Super. Ct. No. SF019630A)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County. Michael G. Bush, Judge.

Jennifer A. Gibson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Michael A. Canzoneri, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*     Before Hill, P. J., Meehan, J. and DeSantos, J.

Defendant Kevin Sharp contends on appeal that (1) the evidence presented at defendant's motion to suppress hearing failed to establish that the police officer had legal justification to detain defendant, (2) his detention was prolonged in violation of the Fourth Amendment, and (3) defendant's contraband discovered during a probation search while he was detained should have been suppressed because its discovery was not attenuated from defendant's unlawful detention. We affirm.

## PROCEDURAL SUMMARY

On July 10, 2019, the Kern County District Attorney filed an information charging defendant with manufacture of controlled substances (Health & Saf. Code, § 11379.6, subd. (a) (count 1)), transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a) (count 2)), possession of methamphetamine for sale (Health & Saf. Code, § 11378 (count 3)), and misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364 (count 4)). It was also alleged that defendant had a prior strike conviction (Pen. Code, §§ 667, subds. (b)–(i),[4] and 1170.12).

Defendant pled not guilty on all counts and denied the allegation.

On August 19, 2019, defendant filed a motion to suppress evidence pursuant to section 1538.5. The trial court denied defendant's motion to suppress.

On October 18, 2019, defendant entered a plea of no contest to count 1, with an indicated sentence of five years in prison, with the representation by the trial court that it would dismiss the prior strike conviction allegation. On February 20, 2020, the court sentenced defendant to five years in state prison and granted defendant's request to strike the prior conviction allegation, consistent with the negotiated plea agreement.

On June 30, 2020, defendant filed a notice of appeal.

---

[4] All statutory references are to the Penal Code unless otherwise noted.

2.

## **FACTS**[5]

Defendant filed a motion to suppress evidence pursuant to section 1538.5 to challenge his detention, which was conducted without a search warrant.

On June 13, 2019, a motel clerk in Kern County told a potential customer she could not rent him a room. He became angry. He threatened to have someone "take care of her" and threatened to throw gasoline on the motel's air conditioning units and set them on fire. He then left the motel. The clerk called law enforcement. Kern County Sheriff's Deputy Bryan Nakabayashi received the call from dispatch and arrived at the motel at approximately 9:55 p.m. The clerk gave him a description of the suspect, and he reviewed the motel's surveillance video footage showing the suspect.

Nakabayashi testified that the suspect "had a thin build. He was tall. He was wearing a black shirt, dark pants, red hat, and had a white shopping bag, and a dark shoulder bag." In the recording from Nakabayashi's body camera, Nakabayashi and two other deputies first interviewed the clerk. She described the suspect as a tall, black male wearing a dark shirt and blue jeans and riding a bicycle. The other deputies talked amongst themselves at the clerk's counter and suggested that the suspect she described could possibly be one of the Doe brothers,[6] and that Doe brother 1 was about 19 years old. The clerk explained that she had refused to rent the suspect a room because he had rented a room on another occasion and caused a disturbance. On that occasion, Doe brother 1 had broken the room's windows. The clerk recognized the suspect and thought he was possibly nicknamed "Bubba," but did not recall his true name. She stated that she could not describe the suspect's bike because she did not see it. She also stated it was

---

**5** The parties stipulated to the investigatory report attached to defendant's motion to suppress as forming a factual basis for defendant's plea.

**6** The men, two brothers, named by deputies as potential suspects will be referred to collectively as the "Doe brothers," and separately as "Doe brother 1," and "Doe brother 2."

"small" when asked if it was "small" or a "mountain bike." She stated defendant wore a "hat" when asked if defendant wore an "orange beanie or a hat." Nakabayashi's body camera then recorded some of the motel's surveillance video footage, showing the suspect. He appeared to be a tall, slim, black male wearing a hat, dark clothes and holding a white shopping bag. The surveillance video footage recorded only showed the suspect for a few seconds and was of very poor quality. The suspect's face and other more detailed features, including the color of his hat, were impossible to discern.[7] The body camera recording then shows, as Nakabayashi finished interviewing the clerk, that other deputies detained Doe brother 1 and Doe brother 2. Nakabayashi brought the clerk to the brothers for an in-field identification, where she excluded both as the suspect. The clerk then clarified her earlier statement that the suspect was possibly related to the Doe brothers. She explained to Nakabayashi that the suspect was not Doe brother 1 or Doe brother 2, but that the suspect was either the Doe brothers' "friend[]or enemy[]." She explained that when the suspect had previously rented a room at the motel, he was there with Doe brother 1's girlfriend. While the suspect was in the room with Doe brother 1's girlfriend, Doe brother 1 came to the motel and broke the windows in the suspect's motel room.

At defendant's motion to suppress hearing, Nakabayashi testified that although the clerk described the suspect's pants as blue jeans, he wrote that the suspect's pants were "dark" in his report because, "[t]he description written down was a—not just a description of what [the clerk] told [him], but a culmination of what she told [him] and

---

**7**    At the hearing on the motion to suppress, the trial court stated while viewing the recording of the surveillance video footage, "Okay. I can see a white bag in his hand from here, but other than that, I can't see much more …. [¶] That's not a true and accurate depiction. I don't think any of us could—the body camera—Deputy [Nakabayashi], what you saw—when you watched the computer monitor [at the motel], you saw it much clearer than what we're seeing; correct?" Nakabayashi answered, "Correct."

what she insinuated about age, and also what [he] had seen on the video surveillance." Nakabayashi further explained that, although he wrote in his report from the motel incident that the suspect was in his "20s," the clerk never actually said anything about the suspect's age. Nakabayashi testified that he inferred that the suspect was in his twenties because "[the clerk] insinuated [the suspect's] age in that she—she said that the subject who committed the criminal threats was possibly related to [the Doe brothers] … [who] are in their 20s."

After interviewing the clerk and watching the motel's surveillance video footage, Nakabayashi and other deputies began searching the area around the motel for the suspect. At approximately 4:00 a.m. the following morning, he saw defendant riding a bicycle roughly one mile from the motel. He testified that he stopped defendant "[t]o determine if he was the subject who had committed the criminal threats," "[b]ecause [defendant] had matched the description of the subject who had committed the criminal threats earlier." Nakabayashi testified that defendant was "a thin built black male. He had a red hat, and a dark shoulder bag, and also a white shopping bag."

Nakabayashi's body camera recording of defendant's detention showed Nakabayashi approach defendant, who was on a bike, from behind and tell him he was being detained. Defendant's hat appeared an orange or red color in the flashing patrol car lights. He was wearing a light gray or white shirt, and pants that were black with a white plaid pattern on them. He was carrying a white shopping bag and a black shoulder bag similar to a purse. Immediately upon being informed that he was being detained, defendant stated that he was on probation, to which Nakabayashi responded, "You say you're on probation?" Defendant responded, "I should be." Nakabayashi then called dispatch for a records check, received confirmation that defendant was on active probation, and began conducting a probation search. During the probation search, Nakabayashi found several items of contraband on defendant's person and in his bags and placed him under arrest for possession of the contraband. As soon as the probation

5.

search was finished, Nakabayashi called other deputies to bring the clerk for an in-field identification to determine whether defendant was the suspect in the motel incident, stating to another deputy that defendant had threatened the motel clerk.

Nakabayashi testified that he did not release defendant immediately upon realizing he was not in his twenties because he still believed him to be the suspect from the motel, "[b]ased on the specific characteristics being the two bags that the suspect of the [threats made at the motel] was carrying, the red hat, and the fact that he was a thin-built, black male of—who was taller." Nakabayashi testified that while he did "not believe that [defendant's] shirt and those pants look like the … suspect's shirt and pants," he still stopped and detained defendant "[b]ecause there were several other pieces of clothing and accessories that matched the description, combined with the subject's apparent race and him being a taller, black male, which was consistent with the … suspect's description."

The trial court denied defendant's motion to suppress the evidence found during the probation search of defendant. The trial court found Nakabayashi's detention of defendant was supported by reasonable suspicion that defendant was a possible suspect of the threats made to the motel clerk. The trial court stated,

> "If someone were to review Defense [Exhibit] B, which is the … disk of the 422 [threats being made by the suspect against the clerk], we really can't see what's on there. Other than a white bag, I cannot tell who is standing at that counter. [Nakabayashi] has testified that he was able to see it much clearer when he was actually watching the computer screen. Within six hours[,] the defendant is riding a bike, just like the suspect. Has a white grocery bag, just like the suspect. Has a black shoulder bag, just like the suspect. Has a red hat, just like the suspect. Tall, thin, black male, just like the suspect. The fact he's changed clothes in six hours, our experience says that defendants change clothes all the time. [¶] It does not, for a brief detention, especially an investigatory detention, the description does not have to match exactly. This is clearly sufficient to do a brief detention to determine if he was the suspect. So[,] motion denied."

## **DISCUSSION**

Defendant contends his convictions must be reversed because the evidence at the suppression hearing failed to establish that Nakabayashi had an objectively reasonable suspicion that defendant was the suspect who threatened the motel clerk. Defendant also contends his detention was prolonged in violation of the Fourth Amendment because defendant was not immediately released once the deputy saw that defendant did not match the description of the suspect. Last, defendant argues that the contraband discovered during Nakabayashi's probation search of defendant should have been suppressed because the probation search was not attenuated from defendant's initial detention. The People argue the trial court properly denied defendant's motion to suppress. We agree with the People.

### *A. Defendant's Detention*

Here, Nakabayashi had objectively reasonable suspicion to detain defendant, supported by specific, articulable facts he testified to, relating to similarities between the description of the suspect and defendant's appearance.

A suspect may be detained if an officer has a reasonable suspicion that criminal activity is afoot and that the suspect is connected with it. (*Terry v. Ohio* (1968) 392 U.S. 1, 30.) A reasonable suspicion requires a showing of specific and articulable facts that would cause a reasonable officer in a like position, drawing on the officer's training and experience, to believe a violation has occurred or is about to occur. (*In re Tony C.* (1978) 21 Cal.3d 888, 893.) "[R]easonable suspicion is 'something more than an "inchoate and unparticularized suspicion or 'hunch,' " ' … but something less than" the fair probability required for probable cause. (*People v. Bennett* (1998) 17 Cal.4th 373, 387.) The courts look at the totality of the circumstances to determine whether there was a particularized and objective basis for the officer's suspicion. (*People v. Butler* (2003) 111 Cal.App.4th 150, 160.)

7.

"A vague description does not, standing alone, provide reasonable grounds to detain all persons falling within that description." (*In re Carlos M.*, 220 Cal.App.3d 372, 381–382; see also *In re Tony C.*, *supra*, 21 Cal.3d at p. 898 [description of "three male blacks" in a day-old burglary report was insufficient to permit detention of all those falling within description].) However, a more particularized description, including characteristics such as hair, eye color, and hair length together with additional circumstances known to the officer, such as proximity of the defendant to the crime site within a brief amount of time from the crime, may justify the detention. (*In re Carlos M.*, at pp. 381–382.) "[T]he detaining officer's subjective suspicion must be based upon a reasonably accurate recollection of the official description of the [suspects]." (*Williams v. Superior Court* (1985) 168 Cal.App.3d 349, 361.)

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

Here, we defer to the trial court's factual findings, as they are supported by sufficient evidence. In light of these findings, we agree with the People that Nakabayashi's detention of defendant was reasonable under the Fourth Amendment. The recordings entered into evidence, as well as Nakabayashi's testimony, support his suspicion that defendant was the suspect from the motel incident, including similarities between the suspect described by the clerk and defendant's appearance when Nakabayashi detained him, such as both being a tall, thin, black males, wearing red hats, carrying white shopping bags and black shoulder bags, and riding bikes, in addition to defendant's proximity to the motel six hours after the suspect threatened the clerk. Looking at the totality of the circumstances, these facts supported a particularized and objective basis for Nakabayashi's reasonable suspicion that defendant was the suspect.

8.

Defendant first argues that Nakabayashi's detention of defendant lacked reasonable suspicion because Nakabayashi could see upon detaining defendant that he was not in his twenties. However, Nakabayashi testified that he only wrote "20s" in his report because he made an inference about the suspect's age. The recording of his interview with the clerk and the surveillance video footage from the motel gave no indication of the suspect's age. Accordingly, the trial court was entitled to find that the discovery that defendant was in his fifties after detaining him did not defeat Nakabayashi's reasonable suspicion that he was the suspect. Defendant next argues Nakabayashi lacked reasonable suspicion to detain him because of discrepancies between the clerk's description of the suspect and defendant's appearance. Defendant contends that the clerk's description of the suspect's bicycle as "small" undermines Nakabayashi's reasonable suspicion because he was detained while riding an average size mountain bike. He also contends that Nakabayashi did not have reasonable suspicion to detain him because of differences between his clothes and the suspect's clothes. However, "minor discrepancies do not prevent development of the suspicions which justify temporary detention for questioning. Crime victims often have limited opportunity for observation; their reports may be hurried, perhaps garbled by fright or shock.… It is enough if there is adequate conformity between description and fact to indicate to *reasonable* officers that detention and questioning are necessary to the proper discharge of their duties." (*People v. Smith* (1970) 4 Cal.App.3d 41, 48–49.) As the trial court noted when it denied defendant's motion to suppress, the minor discrepancies between defendant and the description of the suspect in clothing and the size of his bike did not require defendant's immediate release, because Nakabayashi testified that he based his detention on other similarities between defendant and the suspect described by the clerk and observed by Nakabayashi on the surveillance video footage, including his tall, thin build, red hat, white shopping bag, black shoulder bag, bicycle, and proximity to the motel on the same night. The trial court was entitled to credit Nakabayashi's testimony and the recordings

showing that defendant's appearance matched other aspects of the clerk's description of the suspect.  We defer to this factual determination.

The circumstances here show the trial court was entitled to find based on Nakabayashi's testimony and the recordings entered into evidence that he relied on reasonable suspicion when detaining defendant, supported by specific, articulable facts relating to similarities between defendant's appearance and the suspect's description. These facts provided Nakabayashi with objectively reasonable suspicion under the Fourth Amendment that defendant was the suspect.

### B.  Length of Detention

Defendant next argues his detention was prolonged in violation of the Fourth Amendment.  We disagree.

Generally during a detention, officers may do only what is reasonably necessary to (1) carry out the purpose of the stop, (2) protect officer safety and the safety of others, and (3) maintain the status quo.  (*Terry v. Ohio*, *supra*, 392 U.S. 1, at p. 23; *United States v. Hensley* (1985) 469 U.S. 221, 235.)  Officers who have detained a suspect must carry out their duties diligently.  (*People v. Russell* (2000) 81 Cal.App.4th 96, 102.)  A detention, lawful at its inception, may become unlawful if it exceeds the length of time necessary to carry out the purpose for which the detention was made.  (*People v. Harris* (1975) 15 Cal.3d 384, 390.)  However, there is no " 'hard and fast rule' " for determining how much time constitutes a prolonged detention, and instead the court must examine all of the circumstances surrounding the detention and what is necessary to reasonably confirm or dispel the need for an arrest.  (*Ibid.*)

"In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.…  A court making this assessment should take care to consider whether the police are acting in a swiftly

10.

developing situation, and in such cases the court should not indulge in unrealistic second-guessing.… A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But '[the] fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, by itself, render the search unreasonable.' [Citations.] The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." (*United States v. Sharpe* (1985) 470 U.S. 675, 686–687.)

Detaining a suspect for an in-field identification by a victim has been encouraged because of its potentially quick resolution of whether the detainee should be immediately freed. (*People v. Cowger* (1988) 202 Cal.App.3d 1066, 1071–1072; *People v. Harris*, *supra*, 15 Cal.3d at p. 391; *People v. Craig* (1978) 86 Cal.App.3d 905, 912–913 [where the court, based on the reasoning of *Harris*, held that continued detention for between five to 10 minutes was reasonable for an in-field identification].)

Defendant first argues that Nakabayashi should have released defendant immediately upon discovering that he was 55 years old, and not in his twenties, as he described the suspect in his report. As discussed in the previous section, Nakabayashi initially assumed that the suspect was in his early twenties. However, the hotel clerk never stated the suspect's age. Because defendant's age did not exclude defendant as a suspect, it did not require Nakabayashi to immediately end his detention.

Defendant next contends that his detention was prolonged in violation of the Fourth Amendment because Nakabayashi conducted the records check and probation search of defendant before conducting an in-field identification to determine whether he was the suspect from the motel. However, Nakabayashi diligently pursued the investigation to determine whether defendant was the suspect who threatened the motel clerk. Nakabayashi called for an in-field identification of defendant within eight minutes of his detention, during a swiftly developing situation, where defendant volunteered to

11.

Nakabayashi that he was on probation as soon as he was detained. Nakabayashi did not delay upon learning of defendant's probation status in conducting a records check, and upon confirming defendant was on searchable probation, conducting a probation search. Nor did he delay upon completing the brief search with requesting an in-field identification to determine if defendant was the suspect from the motel incident. As defendant volunteered the information that he was on probation as soon as Nakabayashi told defendant he was detained, Nakabayashi did not act unreasonably by conducting a probation search of defendant immediately upon learning of his probation status, but before calling for the motel clerk to come for the in-field identification. (See *United States v. Sharpe*, *supra*, 470 U.S. at p. 687.)

Last, the clerk's subsequent exclusion of defendant as the suspect did not defeat defendant's detention, as an in-field identification is a less onerous way of resolving the issue of confirming whether a person detained should be arrested. (See *People v. Cowger*, *supra*, 202 Cal.App.3d at pp. 1071–1072.) Nakabayashi had reasonable suspicion that defendant was the suspect when he detained him, and an in-field identification was the most efficient and reasonable way to determine if his suspicion was correct. While he was already placed under arrest based upon the contraband discovered during his probation search, the reasonable suspicion that defendant was the suspect from the motel incident was quickly dispelled when the clerk excluded him during the in-field identification.

Accordingly, Nakabayashi's detention of defendant until the clerk arrived for an in-field identification was not prolonged in violation of the Fourth Amendment. Nakabayashi's detention of defendant was lawful and continuing his detention until the in-field identification could take place after the prompt probation search was a diligent pursuit of the investigation, as it was a likely way for Nakabayashi to confirm or dispel his suspicions as quickly as possible and did not exceed the length of time necessary to

carry out the purpose for which the detention was made in this swiftly developing situation.

## DISPOSITION

The judgment is affirmed.